56   765.
e61   628.

THE MUTUAL LIFE INSURANCE COMPANY OF NEW
    YORK V. JOHN WISWELL, as *Administrator de bonis
    non of the Estate of S. Fred Harker, deceased.*
                    No. 8376.

1. LIFE INSURANCE—*Policy, Construed—Suicide—Burden of
    Proof.* The words of a condition avoiding a policy of life insur-
    ance if the assured shall die "by his own hand" or "by his own
    act" are equivalent to a provision against suicide or intentional
    self-destruction, and upon such issue the burden of proof rests
    upon the insurance company.

2. DEATH, *Accidental or Suicidal—Evidence—Presumption.*
    Where the evidence as to the death being accidental or suicidal
    is so nearly balanced as to leave the question in doubt, the pre-
    sumption is in favor of the theory of accidental death.

3. INSANE ASYLUM—*Discharge of Patient—Presumption.* An
    adjudication of insanity, followed by the commitment of the
    patient to an asylum for the insane, does not create a conclusive
    presumption of the continuance of insanity several years after the
    discharge of the patient from such asylum.

            *Error from Cherokee District Court.*

JOHN N. RITTER, as administrator of the estate of
S. Fred Harker, deceased, filed his petition November
28, 1890, declaring on a policy of insurance issued by
the Mutual Life Insurance Company of New York
October 22, 1889, to and upon the life of said S. Fred
Harker for the sum of $2,000. The policy was on the
20-year life plan, the assured was 24 years of age, the
annual premium was $61.80, and the death of the as-
sured occurred July 5, 1890. The defenses relied
upon are, that the negative answer given to question
9, as follows: "Have you any predisposition, either
hereditary or acquired, to any constitutional disease
such as consumption, rheumatism, insanity, gout, or
scrofula," was false as to insanity, and that the as-
sured died by his own act in taking opium or some
other poisonous substance, notwithstanding he had

warranted the truth of said negative answer, and that he would not die by his own act during the period of two years after the date of said policy. It was not directly averred in the answer that the assured committed suicide, or designedly or intentionally took his own life. The reply consisted of a general denial and an averment that the assured did not take such opium or other poisonous substance with the intent or purpose of producing death, and that, if death did ensue from the taking of such poison, it was unintentional and purely accidental.

On the trial, at January term, 1892, the court gave, among others, the following instructions :

"4. You are instructed that unless you believe from the testimony in this case that the said S. Fred. Harker came to his death by his own act by opium poison, self-administered, with intent to destroy his own life, or that he falsely stated that he had no predisposition, either inherited or acquired, to a constitutional disease, as insanity, your verdict must be for the plaintiff.

"5. If you believe from the testimony in this case that the said Harker died from poison self-administered, except you believe from the evidence that the taking of such poison was unintentional or accidental, your verdict will be for the defendant."

"8. You are instructed that accidental death, although literally by one's own act, is not within the terms of the warranty exempting the company from liability upon the policy ; and, when it is shown that the death was accidental or unintentional, a recovery may be had on the policy in this case, if you believe from all the evidence that Harker took as a medicine and without an intent to destroy his own life, and by accident he took an overdose of poison, and death resulted therefrom, your verdict will be for the plaintiff, except you find that defendant has proven the other defense relied on.

"9. If, from all the evidence in this case, you are

in doubt whether the death of said Harker was the result of accident or suicide, you will resolve the doubt in favor of the theory of accident.

"10. If you believe from the evidence in this case that the said Harker in his application gave a false answer to the company to the question whether he was predisposed to the constitutional disease of insanity, whether such predisposition was hereditary or acquired, such false answer will render the policy void, and your verdict will be for the defendant.

"11. The defense is a legal one, and is to be so regarded by you. The purpose of those questions and answers is to enable the company to determine whether they will accept the risk and insure the applicant. By express agreement these answers are warranted to be true, and offered to the company as a consideration of the contract of insurance. The answers should be true, and unless they were true, to the knowledge of the applicant, the policy is void.

"12. Some evidence has been offered you for the purpose of showing that some proceedings were had in the county court of Perry county, Illinois, in the year 1885, in which the said Harker was adjudged to be insane ; that he was sent to the asylum of the state of Illinois at Anna. This evidence is not conclusive on you as to his alleged insanity. You are to consider it in connection with all the evidence in the case, and from all the testimony determine whether the deceased was in fact predisposed to insanity, whether the same was constitutional, hereditary, or acquired, and whether, at the time he gave the answer to the question to which I have directed your attention, was known to him to be false. If you believe from all the evidence that the answer to said question was in fact untrue, you will find for the defendant.

"13. If you believe from the evidence in this case that, prior to making this application for insurance, the said Harker had been insane, and you further believe that owing to some peculiarity of temperament or habits of life he was liable to a return of his insanity, whether the same was inherited or constitutional, you will find for the defendant."

The jury, on January 14, 1892, returned a verdict in favor of the plaintiff for $2,133.26; and, after the overruling of a motion for a new trial on the part of the defendant, the court rendered a judgment upon the verdict, and the insurance company prosecutes this proceeding in error to reverse said judgment. On February 8, 1896, John N. Ritter, administrator, died, and on March 2, 1896, John Wiswell was appointed administrator *de bonis non*, and the action was revived in this court by consent, March 5, 1896. Some further facts appear in the opinion, filed May 9, 1896.

*R. M. Cheshire*, for plaintiff in error.

*A. H. Skidmore*, *T. P. Anderson*, and *John Wiswell*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J.: I. The plaintiff in error contends that under the pleadings the burden was upon the plaintiff below to prove by a preponderance of the evidence that the death of the assured from taking the opium or other poisonous substance was unintentional and accidental. There is no room to doubt that the taking of the opium was the act of the assured; but the courts are in general accord in holding that the words of a condition avoiding the policy if the assured shall die "by his own hand" or "by his own act" are equivalent to a proviso against suicide or intentional self-destruction. (Bliss, Life Ins. §§ 228, 229; 2 Biddle, Ins. § 831; *Life Ins. Co. v. Terry*, 15 Wall. 580, 591; *Penfold v. Universal Life Ins. Co.*, 85 N. Y. 317, 321, 322; *N. W. Mutual Life Ins. Co. v. Hazelett*, 105 Ind. 212; *Eq. Life Assurance Soc. v. Paterson*, 41 Ga. 338, 367.) Unless the answer be construed as intending to allege suicide as a defense,

it was insufficient in this respect, and no reply thereto was necessary, and a general denial would be sufficient if the insurance company had alleged the suicide of the assured. We therefore hold that the burden of proof was not changed by reason of the condition of the pleadings; and, in order to a successful defense on this ground, it devolved upon the insurance company to establish by a preponderance of the evidence that the taking of the opium was with intent on the part of the assured to take his own life, and the court did not err in this respect in giving instructions 4, 5, and 8.

II. S. Fred Harker, then being a school-teacher, 20 years of age, was adjudged insane in the probate court of Perry county, Illinois, on November 5, 1885, the verdict reciting that the cause of insanity was excessive study, and that Harker manifested suicidal tendencies. He was committed to the asylum for the insane at Anna, Ill., on the next day, and on December 14 the superintendent wrote to the authorities of Perry county, notifying them that Harker had recovered, and asking them to remove him within 30 days, and he was finally discharged from the asylum December 24, 1885. The testimony shows that, while at the institution, Harker was afflicted with acute melancholia, a mild form of insanity unaccompanied by delusion. Afterward, he was a student at the university at Ottawa, Kan., further preparing himself as a teacher and for the Baptist ministry. He then became the principal of the high school at Columbus, and during the vacation of 1890 he visited relatives at Sioux City, Iowa, and El Dorado, Kan., returning to Columbus on July 3, with a view to an engagement for preaching to the Baptist congregation for three months, having so served them before occasionally in

49—56 KAS.

the absence of the regular pastor. There was testimony that Harker suffered to some extent from insomnia, and that he took powders for the purpose of producing sleep. He was discovered in an unconscious condition in his room on the afternoon of July 5, and he died that night at about half past 9 o'clock, the physicians being of opinion that the death was from opium poisoning. The theory of the plaintiff was, that Harker had accidentally taken an overdose of morphine powders or opium to produce sleep, while the defendant maintained that he had committed suicide. Certain circumstances tended to support each of these conflicting theories, and instruction 9 may have been of much importance; but it seems to be fairly settled that in the absence of satisfactory evidence as to the death being accidental or suicidal the presumption is in favor of the theory of accidental death. (Bliss, Life Ins. § 367; 1 May, Ins. § 325; 2 Biddle, Ins. § 842; *Insurance Co. v. Bennett*, 90 Tenn. 256, 261; *Keels v. Mutual Reserve Fund Life Association*, 29 Fed. Rep. 198; *Mallory v. Travelers' Ins. Co.*, 47 N. Y. 52, 54; *Travelers' Ins. Co. v. McConkey*, 127 U. S. 661, 667.)

III. A mere misstatement, unless wilful and fraudulent, will not avoid the policy, in the absence of a warranty of the truth of the statement. (*Washington Life Ins. Co. v. Haney*, 10 Kan. 525; *N. W. Mutual Life Ins. Co. v. Woods*, 54 id. 663.) The trial court, however, treated the answer to question 9 as a warranty, as fully shown by instructions 10, 11, 12, and 13. A single expression occurs in instruction 12 which might indicate that the court had in mind the law as to a misstatement in the absence of warranty; but, as it is immediately followed by the direction that, if the jury believed from all the evidence that the answer to said question was in fact untrue, they should find for the

defendant, we think that the fault of referring to
the knowledge of the applicant must be deemed im-
material.    There was no evidence tending to show
hereditary insanity, or that the assured was mentally
afflicted at any time after his discharge from the asy-
lum in 1885.    The presumption of continued insanity
arising from an adjudication thereof may be overcome
by evidence other than an adjudication of restoration
(*Water-Supply Co. v. Root*, ante, p. 187; *Rodgers v.
Rodgers*, ante, p. 483, 43 Pac. Rep. 779), and on this
point instruction 12 was correct; and, as there was
no intimation of any recurrence of the malady, there
was no evidence, except the record of adjudication of
insanity in 1885, that the answer of the assured to
question 9 was in fact untrue, and any presumption
arising from that record was fully rebutted by the
evidence.

Some questions are raised upon the introduction of
evidence, but they are without substantial merit, and
the judgment must be affirmed.

All the Justices concurring.