### D. M. LOWER *et al.* v. H. W. SCHUMACHER.

**No. 11,538.**   (60 Pac. 538.)

INSANITY—*Proof of Restoration—Case Followed.*   The case of *Water-supply Co. v. Root*, 56 Kan. 187, 42 Pac. 715, holding that the presumption arising from an adjudication of insanity may be overcome by proof other than an adjudication of restoration, and that a contract or conveyance made by one adjudged a lunatic, but who is in fact sane when it is made, is valid, although no adjudication has been made that he has been restored to his right mind, followed.

Error from court of appeals, southern department; A. W. DENNISON, B. F. MILTON, and M. SCHOONOVER, judges.   Opinion filed March 10, 1900.   Affirmed.

*C. F. Hutchings*, and *N. F. Heitman*, for plaintiffs in error.

*A. L. Redden*, and *H. W. Schumacher*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : This was an action to quiet the title to real estate in the city of El Dorado, brought by H. W. Schumacher against D. M. Lower and other heirs of E. L. Lower, deceased. The parties on both sides claim title through E. L. Lower, deceased, and it is conceded by all that prior to December 13, 1869, Lower owned the real estate, and upon that day he and his wife joined in selling and conveying it by warranty deed, and that Shumacher holds the property by a direct chain of title under the conveyance mentioned, and that he and his grantors have been in the open, notorious and peaceable possession of the same since that time. D. M. Lower contends that his father, E. L. Lower, was incapable of conveying the property when the deed was made, because of a previous adjudication of insanity, and that upon the death of his father, which occurred in 1896, the property passed to his heirs.

The case was tried upon an agreed statement of facts, and in addition to the facts already stated it was stipulated that on April 28, 1868, a complaint was made that E. L. Lower was insane and an inquisition was had, at which the jury found him to be ''insane and unfit to be at large.'' The probate judge committed him to the insane asylum at Osawatomie on May 4, 1868, and appointed a guardian for him, but the person so appointed never qualified or acted as guardian, nor was any business ever done for Lower

by or through a guardian. He remained but a few days at the asylum, after which he returned home, and the following entry was made in the records of that institution : " Recovered without requiring much medical treatment. Discharged as recovered May 30, 1868, by superintendent." It was stipulated and agreed that from and after his discharge from the asylum he continued to be and ever after was sane and capable of transacting business. No proceedings, however, were ever had in the probate court to declare his restoration to sanity, and no finding or decree of any court was ever made or had of such restoration. After his discharge from the asylum, and while he was sane, he acquired the land in controversy, and nearly two years after his discharge conveyed the same in the manner heretofore stated.

The question presented here is, Was the conveyance made by Lower while he was absolutely sane invalid because of the failure to obtain a finding and judgment that he had been restored to his right mind? This was a debatable question in Kansas until the decision in the case of *Water-supply Co. v. Root*, 56 Kan. 187, 42 Pac. 715, where it was determined that a contract or conveyance made by one who had been adjudged insane, but who was at the time in fact sane, was not absolutely void. When insanity has been adjudged or once proved to have existed, it is presumed to continue, but it was held that it was not a conclusive presumption ; that a recovery and sanity might be shown where no adjudication of restoration to reason had been made ; and that a contract entered into by a sane person after an adjudication of insanity and before an adjudication of restoration is valid. The writer hereof held to the view that by reason of the statutory provision declaring a contract made by

one adjudged to be insane to be invalid, a conveyance made by an adjudged lunatic before a finding or decree of restoration was a nullity and incapable of ratification. The contrary view, which is supported by authority, was adopted by the court, and since that time it has been treated as a settled question.

In *Rodgers v. Rodgers*, 56 Kan. 483, 43 Pac. 779, Rodgers was adjudged to be insane and committed to the asylum. A guardian was appointed, who remained in charge of Rodgers's business after his discharge from the asylum. It was claimed that no valid adjudication of restoration had been made, and it was held that "the presumption of continued insanity arising from an adjudication thereof may be overcome by evidence other than an adjudication of restoration." In the later case of *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. 996, the question was again brought before the court, and it was decided that "an adjudication of insanity, followed by the commitment of the patient to an asylum for the insane, does not create a conclusive presumption of the continuance of insanity several years after the discharge of the patient from such asylum." It was likewise held that the presumption might be overcome by evidence other than an adjudication of restoration. See, also, *The State v. McMurry*, ante, p. 87, 58 Pac. 961.

In the present case there is no dispute as to the mental condition of Lower. His derangement, whatever the cause, appears to have been temporary, and it readily yielded to treatment. His heirs, who now attack the conveyance in question, expressly stipulate that he had been restored to his right mind and was sane when the property was sold and conveyed. It seems to have been a permanent recovery, as it was

Lower v. Schumacher.

agreed that he was not only sane when he was discharged from the asylum, but that he continued to be sane and capable of transacting business until his death — a period of about twenty-eight years.

Attention is called to the fact that in the Root case no guardian of the person and estate of the one adjudged insane had been appointed, while in the present case such an appointment was made. If it be correct that guardianship affords any ground for a distinction, there is no room for one in the cases named. While a guardian was designated to act in behalf of Lower, he never qualified nor acted as such, and never became a guardian in fact. The person designated not having qualified or assumed to act, there was no actual guardianship in this case any more than there was in the Root case. The decision in the Root case, as well as those following it, is deemed to be controlling, and there is no disposition at this time to reopen the question or to unsettle the decision.

As to the question of jurisdiction, it was competent to show *aliunde* the record the value of the property in controversy, and the plaintiffs in error proffered proof that it exceeded in valued the sum of $100. The plaintiffs in error were, therefore, entitled to a review in the court of appeals, and for that reason the merits of the case have been considered.

The judgment of the district court will be affirmed