No. 29,361.

THE FOURTH NATIONAL BANK IN WICHITA, as Executor and as Trustee of the Last Will and Testament and of the Estate of M. R. Diver, Deceased, *Appellee,* v. IDA DIVER, *Appellant.*·

(289 Pac. 446.)

Opinion filed July 5, 1930.

*George McGill, H. C. Castor, Jean Madalene* and *W. A. Blake,* all of Wichita, for the appellant..

*V. Harris, M. P. Shearer, Charles G. Yankey, John L. Gleason, Kenneth K. Cox* and *M. H. Cundiff,* all of Wichita, for the appellee.

*T. C. Wilson* and *Henry Lampl,* both of Wichita, as *amici curiæ.*

The opinion of the court was delivered by

JOCHEMS, J.: This was an action brought by the guardian of a feeble-minded person to set aside and declare invalid a marriage entered into between his ward and the appellant. After the death of the ward the action was revived in the name of the executor and trustee of the last will of the ward. Plaintiff prevailed, and the defendant appeals.

On December 24, 1928, H. D. Lester, as guardian, filed this action, pleading that he had been duly appointed as guardian of the person and estate of M. R. Diver, a feeble-minded person, and was so duly appointed on December 21, 1928. Diver died on February 16, 1929, and thereafter the Fourth National Bank of Wichita came into court, after having been appointed as executor and trustee of the last will and testament of M. R. Diver, deceased, and filed a motion to revive the action. Order of revivor was made, and thereafter the plaintiff Fourth National Bank filed an amended and supplemental petition. It alleged that on December 19, 1928, a jury in the probate court had found M. R. Diver was a feeble-minded person, incapable of managing his affairs, and that it was necessary that a guardian be appointed for his person and estate; that thereafter, on December 21, 1928, the probate court did appoint H. D. Lester as guardian; that on December 20, 1928, Diver was a very old and decrepit man of about eighty-nine years of age, was mentally and physically incapable of attending to his personal and business transactions or the managing of his affairs, and was incapable of making or entering into a marriage contract or any kind of contract whatsoever; that he was easily influenced and misled and imposed upon by persons inclined so to do. Further, that after the adjudication in the probate court an appeal was taken to the district court of Sedgwick county and trial was there had upon the appeal on February 8, 1929. The jury that heard the evidence upon the appeal returned a verdict in the district court finding M. R. Diver to be a feeble-minded person, incapable of managing his affairs, and that it was necessary that a guardian be appointed for his person and estate. Plaintiff alleged that on February 16, 1929, the district court found and

adjudged that the said M. R. Diver was a feeble-minded person, incapable of managing his affairs, and that it was necessary that a guardian be appointed for his person and estate; that from and after December 19, 1928, Diver never regained his mental faculties and was treated as a feeble-minded person incapable of attending to his personal or business matters.

The petition further alleged that the defendant at all times knew of the action in the probate court and of the feeble condition of mind of Diver and of his incapacity to transact business or enter into a marriage contract, and that on December 20, 1928, she well knew that on December 19, 1928, he had been found by a jury in the probate court to be a feeble-minded person, incapable of managing his affairs and that it was necessary that a guardian be appointed for him; that defendant, notwithstanding she knew all the facts, did on December 20, 1928, fraudulently, wrongfully and secretly, and without the consent of Diver, spirit him away from the city of Wichita to Hutchinson (which is a distance of approximately sixty miles from Wichita), and on that date she fraudulently, wrongfully and unlawfully prevailed upon and induced M. R. Diver to go through the form of a pretended marriage with the defendant in the city of Hutchinson; that at the time of the marriage Diver was a feeble-minded person, incapable of entering into a marriage contract and incompetent to comprehend the nature or effect thereof; that he was incompetent to comprehend the contract binding his property or person; that the defendant ever since December 20, 1928, has affirmed and continues to affirm that she is the lawful wife of Diver and claims and asserts that as his widow she is entitled to one-half of his estate; that all of such claims are false and are made for the purpose of injuring Diver in his property rights and of creating rights in the property of Diver which passed to the executor and trustee under his will; that defendant contrived to have the marriage performed in fraud of the rights of the property of Diver and in fraud of plaintiff's rights in the estate as executor and trustee under the will.

Motion to strike and demurrer were filed and both were overruled by the court.

Defendant then answered, admitting the marriage, but specifically denying everything else in the petition. She pleaded the will had been revoked prior to the appointment of a guardian; that plaintiff had no authority to act thereunder; that she was the sole heir of M. R.

Diver, and further alleged that if Diver was feeble-minded and did not have capacity to transact business on December 19, 1928, that subsequent thereto, and on December 20, 1928, he was in possession of his mental faculties and that on the latter date he requested that defendant marry him and she consented; that at all times subsequent to the marriage and up to his death she and Diver lived together as husband and wife and cohabited as such; that after December 20, 1928, Diver continuously held the defendant out as his wife; that he stated to defendant that they were in fact husband and wife; that she agreed to that statement and put it into effect by cohabiting with him; that at all times while thus living together the defendant was held out by Diver as his wife and introduced as such and she so considers herself; that when Diver requested her to become his wife he fully understood the nature of the obligation mutually assumed.

Upon the issues set forth in the proceedings as above outlined the case was tried to the court. Many witnesses, both lay and medical, were brought before the court by both sides and a voluminous mass of testimony was introduced. In addition to the oral testimony of witnesses given before the court upon the hearing of this case many exhibits were introduced in evidence. The verdict rendered by the jury in the probate court adjudging M. R. Diver to be feeble-minded and a similar verdict rendered at the trial on the appeal from the probate court to the district court were both introduced in evidence. A transcript of the testimony given by Diver at the hearing in the probate court and a transcript of the testimony given by him at the trial on appeal to the district court were both introduced in full upon the trial of this case. The jurors who heard the trial in the probate court and those who heard the appeal testified in this action. At the conclusion of the hearing of evidence both sides filed suggested findings of fact which they requested the court to make. The court made findings of fact and conclusions of law, which are as follows:

FINDINGS OF FACT.

"1. M. R. Diver, who died on the 16th day of February, 1929, was past eighty-nine years of age. He had come to Wichita in an early day and had been engaged in numerous businesses, among which was conducting a stage line. He accumulated considerable property, which in late years became quite valuable, and at the time of his death his estate was worth about $248,000. He was a veteran of the civil war. His former wife died about ten years ago,

or in March, 1918, and in 1919 Mr. Diver took up his residence with Mr. and Mrs. Wilhite and he resided with them most of the time from that date until the time of his death. Mr. Wilhite died in the spring of 1928 and Mr. Diver continued his residence at the home of Mrs. Wilhite, with the exception of the time that he was in the sanitarium and a short time he roomed with a Mrs. Harding.

"2. In the spring of 1928 Mr. Diver became seriously ill, and in April was taken to the Kansas sanitarium in Wichita, where he remained and was treated for his illness for about three months. During this time that he was in the sanitarium he had delusions and hallucinations.

. "3. Mr. H. D. Lester, assistant cashier of the Fourth National Bank, had been looking after Mr. Diver's business affairs since about the year 1922. In November, 1928, Mr. Diver had $50,000 in government bonds in a safety-deposit box in the First National Bank in Wichita and approximately $27,000 on deposit in the First National Bank and a checking account.in the Fourth National Bank in Wichita, and in a safety-deposit box in the Fourth National Bank was kept his will and a ninety-nine-year lease on valuable property in Wichita.

"4. A few days prior to the 23d day of November, 1928, the defendant, in company with Mr. Diver, appeared at the Fourth National Bank and requested Mr. Lester to let them have Mr. Diver's last will and testament. Thereafter it was returned to Mr. Lester and placed in the safety-deposit box. On November 23, 1928, the defendant appeared at the Fourth National Bank and presented to Mr. Lester what purported to be an order signed by Mr. Diver, requesting Mr. Lester to let the defendant have Mr. Diver's will. Mr. Lester refused at that time to deliver the will to the defendant. Later, and on the 26th day of November, 1928, Mr. Diver executed what purported to be a power of attorney to Mrs. Wilhite and Mattie R. Hatfield, which, in substance, gave to these two women, the. former of whom is the defendant in this case, the right and authority to open Mr. Diver's safety-deposit boxes and take therefrom all of his papers of every description, etc."

The record shows that upon a motion for additional findings made by the defendant the court added to the fourth finding, above set out, a copy of the power of attorney referred to, which reads as follows:

"I, M. R. Diver, do hereby appoint Mrs. M. R. Hatfield and Mrs. Ida A. Wilhite my true and lawful attorneys in fact for and in my stead to remove any of my papers or documents from my lock boxes in the First National Bank in Wichita, Kan., and the Fourth National Bank of Wichita, Kan., and to read any of my papers or documents in said bank vaults or any other place, wherever place they may be, and to make any other investigations that may be necessary to the true state of my financial and property affairs. In witness whereof I have hereunto set my hand this 26th day of November, 1928.
(Signed)     M. R. DIVER."

The above statement was duly acknowledged before a notary public.

Continuing with the findings:

"5. On the 27th day of November, 1928, an information in the usual form was filed in the probate court of Sedgwick county, Kansas, subscribed and sworn to by W. R. Turner, charging that Mr. Diver was a feeble-minded person, incapable of managing his affairs, and that it was necessary that a guardian be appointed for his person and estate. Thereafter a hearing was had in the said matter in the probate court, and on the 19th day of December, 1928, a jury returned a verdict in that court as follows:

" 'State of Kansas, Sedgwick County, ss.—In the probate court of said county and state: We, the undersigned, jurors in the case of M. R. Diver, having heard the evidence, find that the said M. R. Diver is a feeble-minded person and is incapable of managing his affairs, and that a guardian should be appointed for his person and estate.

" 'Dated December 19, 1928.

G. C. DAVIS, M. D.           EARL B. ROSS, M. D.
B. F. SUTHERLAND.           ELMER G. BRINKMEYER.
H. F. HOFFMAN.              P. B. PIERSON.'

"Thereafter, on the 26th day of December, 1928, an appeal was perfected to the district court of Sedgwick county, Kansas, on behalf of M. R. Diver from the aforesaid adjudication, and the appointment of a guardian by the probate court.

"6. A hearing was had in the district court of Sedgwick county, Kansas, division number four, and on the 6th day of February, 1928, the jury returned a verdict in the said court as follows, to wit:

" 'State of Kansas, Sedgwick County, ss.

" 'We, the undersigned jurors in the case of *In re M. R. Diver,* having heard the evidence, find that the said M. R. Diver is a feeble-minded person and incapable of managing his affairs, and that it is necessary that a guardian should be appointed for his person and estate.

" 'Date of this verdict, February 8, 1929.

W. A. PHARES.               J. W. CORR.
C. S. McLAIN.               WM. E. ORRELL.
CLARENCE CACKLEY.           N. E. OCKER.'

"7. Mr. Diver testified in person in both the probate court and the district court, the date of the latter being January 25, 1929. Mr. Diver never appeared in the district court in said hearing after the 25th day of January, 1929. He was confined to the house at 2010 North Market street from the 25th day of January until about three or four days prior to his death, by reason of arthritis in one of his knees. He died on the 16th day of February, 1929, as a result of pneumonia of three or four days' duration.

"8. The defendant was present in the probate court of Sedgwick county, Kansas, every day during the hearing of the matter of M. R. Diver, a feeble-minded person, and was present in that court on the 19th day of December, 1929, when the jury returned the verdict heretofore mentioned. On the 20th day of December, 1928, the defendant, in company with Laura Buckwalter and one MacAlexander, took M. R. Diver to Hutchinson, Kan., a distance of about sixty miles from Wichita, where the said defendant made application for a marriage license to marry the said M. R. Diver. In the application for said license appears the following question:

" 'Have you or has the person you are expecting to marry ever been afflicted with epilepsy, imbecility, feeble-mindedness or insanity?'

"The said defendant answered this question: 'No.' The application was sworn to by the said defendant. After procuring the marriage license the said parties went to the home of Rev. Claude Miller in the said city of Hutchinson and went through a form of a marriage ceremony and a pretended marriage between the said defendant and M. R. Diver some time between the hours of six and seven p. m. of that day.

"9. M. R. Diver was, immediately after his marriage in Hutchinson, Kan., under order of court, placed in the Wichita sanitarium and was there treated from December 23, 1928, until January, 1929.

"The probate court of Sedgwick county, Kansas, immediately after the return of the jury's verdict on December 21, 1928, appointed H. D. Lester guardian of the estate and of the person of M. R. Diver, a feeble-minded person, and Lester qualified as guardian, and on the 24th day of December, 1928, H. D. Lester, as guardian of M. R. Diver, brought this action to set aside the marriage of M. R. Diver to Ida A. Wilhite, the defendant herein, and after the death of M. R. Diver the action was revived in the name of the Fourth National Bank in Wichita, as executor and trustee of the last will and testament and of the estate of M. R. Diver, deceased.

"10. During the hearing on the appeal from the probate court to the district court Mr. Diver did not appear to know what was going on and was suffering from advanced senile dementia.

"11. At the time of the marriage of M. R. Diver to Mrs. Wilhite he was suffering from senile dementia in an advanced stage, and the defendant well knew his condition and that he had been declared a feeble-minded person by a jury in the probate court.

"12. At the time of his marriage to the defendant and subsequently thereto until the time of his death M. R. Diver had the mind of a child from six to eight years and was incapable of making a marriage contract or of understanding the obligations of a marriage contract or of its effect upon himself and his property.

"13. The will of M. R. Diver was duly admitted to probate in the probate court of Sedgwick county, Kansas, on the 23d day of February, 1929, and the plaintiff in this action was appointed as executor of the said will and of the estate of M. R. Diver, deceased, and the plaintiff is duly authorized to bring this action and to have it revived in its name.

### "Conclusions of Law.

"1. The court concludes from the foregoing facts that the marriage of M. R. Diver to Ida A. Wilhite on the 20th of December, 1928, was void and should be so declared by this court, and that the defendant Ida A. Wilhite be enjoined and restrained from claiming any rights to the property or estate of M. R. Diver, deceased.

"Dated at Wichita, Kan., August 21, 1929."

The principal questions involved in this appeal are:

1. Did the guardian have authority to bring this action, and if

so, was it properly revived in the name of the executor and trustee, or did the action terminate at the death of Diver?

2. Was the marriage valid or invalid?

The appellant contends that the guardian had no authority to institute this action, because the legislature has given no specific authority for a guardian to bring such an action, and further contends that the action cannot be revived in the name of the executor or trustee. Appellant urges that an action to annul a marriage must be brought by one of the parties to the marital contract. In support of this he cites R. S. 60-1515, which provides:

"When either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such a marriage, the same may be declared void by the district court, in an *action brought by the incapable party;* but the children of such marriage, begotten before the same is annulled, shall be legitimate. Cohabitation after such incapacity ceases shall be sufficient defense to any such action."

The appellant urges that only the incapable party could bring the action—that inasmuch as Diver did not take any affirmative step to annul the marriage during his lifetime and he has since died, that the marriage cannot be impeached or attacked and is made valid from the beginning.

It is impossible to conceive how an incapable party could elect to bring an action to declare a marriage invalid. In *Birdzell v. Birdzell,* 33 Kan. 433, 6 Pac. 561, Justice Valentine very aptly said

"Marriage is a personal status. . . . It cannot be dissolved or abrogated except with the voluntary consent of such insane person, and such insane person is incapable of giving any consent to such dissolution or abrogation. How could a guardian conduct the mind of his insane ward through the ceremony that would make him or her a husband or wife, or how could he conduct such mind through a litigation that would undo the marriage relation? . . . The injured party may be willing to condone the wrong, or, for reasons satisfactory to himself or herself, may desire to continue the marriage relation notwithstanding the wrong. . . . Whether a party who is entitled to a divorce shall commence proceedings to procure the same or not is a personal matter, resting solely with the injured party, and it requires an intelligent election on the part of such party to commence the proceedings, and such an election cannot be had from an insane person." (pp. 435, 436.)

Appellant argues from the foregoing authority and from the statute above set out that inasmuch as (1) the action can be brought only by the incapable party, and (2) inasmuch as an insane person is incapable of giving any consent to a dissolution, that therefore the guardian had no authority and this action must fail. It must

be remembered that the guardian was appointed as guardian of both the person and the estate of Mr. Diver. As the conservator of his estate, having knowledge of the facts and circumstances alleged in his petition, and having knowledge of the fact that the marriage with the defendant would affect the estate and property rights of the ward, it became the duty of the guardian to bring an action to determine the validity of the marriage. In bringing this action he was not bringing it as a guardian of the person. He was not acting from the standpoint of the personal status of his ward. He was not attempting to exercise any consent or any choice of the ward to have the marriage annulled, but he was acting purely as the conservator of the estate of his ward.

In *Powell v. Powell*, 18 Kan. 371, this court said:

"A marriage with an insane person is absolutely void for want of sufficient mental capacity on the part of such insane person to consent to the marriage." (Syl. ¶ 3.)

It has been frequently held that the invalidity of a void marriage may be shown in any court between any parties either in the lifetime of the ostensible husband and wife or after the death of either of them or both of them. (See *Wiley v. Wiley*, 75 Ind. App. 456, 123 N. E. 252, and cases cited therein.) In *Wiley v. Wiley*, supra, the court said:

"The specific relief asked is (1) that the ostensible marriage be adjudged void, and (2) that the status of the child be judicially established. But it is clear that the ultimate purpose of the action is to determine the property rights of the parties. In other words, the ultimate purpose of the action is to determine who are the heirs at law and entitled to take the estate of the deceased. Under the facts averred, if the ostensible marriage is void, then Emma Bagby Wiley has no interest in said estate; and if Ethel Pauline Wiley is not the child of the deceased, then she has no interest in the estate. The purpose of the action is as unmistakable as if appellants had filed a complaint to quiet title to the real estate. . . . Appellants are not seeking to dissolve a voidable marriage. They rest their claim to the estate on the unequivocal theory that the pretended marriage is void. They are concerned in the marital status of their ancestor to the extent only that it interferes with their alleged title to his estate. If appellants had joined in a complaint to quiet title, in the usual short form under the statute, and containing no reference whatsoever to the pretended marriage, nevertheless, under the general rule, the marriage could have been thus attacked collaterally, and if shown to be void could have been so declared in that proceeding." (pp. 464, 465.)

Under the circumstances set forth in the petition and pleaded by the guardian and as found by the trial court in this case, we hold

that the guardian of the estate of the deceased did have a right to institute this action during the lifetime of his ward.

Is the action such a one as survived to the executor and administrator?

In this connection our statutes have some application. R. S. 60-3201 provides:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

R. S. 60-3202 provides:

"No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant."

It is clear, therefore, that under the provisions of the foregoing statutes an action such as the case at bar is one which survives and may be revived in the name of the executor or administrator.

In 1 C. J. 209, § 405, it is said:

"On the other hand, it has been held that the right of action to cancel a marriage contract which, if genuine and followed by the requisite consummation, would create rights in the property of the alleged husband, survives to his executor or administrator."

See, also, 1 R. C. L. 47, § 45.

The cases cited in support of the rule as stated in the above authorities were based upon fraud, but the rule applies just as forcibly to the instant case. In the case at bar the action was originally brought by the guardian in the proper exercise of his duty to look after the property interests of his ward. The power of the guardian ceased at the death of the ward, and thereupon the action was properly revived in the name of the executor and trustee under the will, whose duty it then became to conserve the estate of the deceased. Reason and logic compel this conclusion. To hold that an action to set aside a void marriage does not survive to the executor or administrator of a deceased person would be to throw down the bars for the perpetration of rank injustices. We therefore hold that a cause of action such as the one in the case at bar does not abate upon the death of the alleged incompetent person, but may be revived in the name of his executor or administrator.

Was the marriage valid?

In support of its position that the marriage was not valid the appellee relies in part upon R. S. 39-224, which reads:

"No contract of any person found to be as hereinbefore specified, which shall be made without the consent of his guardian, shall be valid or binding; and such guardian may sue for and recover on money or property which may have been sold or disposed of by his ward without his consent."

The appellant argues that this section of the statutes does not apply to a marriage contract, and in this connection calls attention to R. S. 23-120. Appellant argues that by the provisions of the statute last cited a feeble-minded person may under the conditions therein specified lawfully marry, and that therefore the consent of the guardian referred to in R. S. 39-224, supra, does not relate to a marriage contract.

In *Payne v. Burdette*, 84 Mo. App. 332, where a statute similar to R. S. 39-224 was under consideration, the court said:

"But in the nature of things this could not apply to marriage, since that is a contract so peculiarly individual and personal as not to permit of anyone acting for the party concerned. Therefore we conclude that that section did not intend to include a marriage contract." (p. 338.)

See, also, *Cowan v. Bean*, 159 Wis. 67, 149 N. W. 745.

In this connection we again call attention to the language used by Justice Valentine in the Burdette case, *supra*. Inasmuch as the matter of marriage is one which involves something more than mere judgment—a personal relation involving love and affection—it is readily seen that a guardian could not properly act for one who contemplates that relation. The guardian is unable to know what the attitude of mind of a ward would be as to his feeling of sentiment or his real desire in such an affair. All the guardian can do is to exercise a calm judgment as to what is for the best interest of his ward. This he can do with reference to all other contracts, but from the very nature of the marriage relation he is not in a position to either permit or forbid that kind of a contract.

The appellant argues at considerable length upon the proposition that the marriage between appellant and Diver was at most voidable and contends that a guardian or executor cannot disaffirm a personal status. Appellant contends that the disaffirmance would have to be made by the injured party during the lifetime of the parties. This argument might be good if nothing more than the personal status of the parties were involved. As we have hereinbefore noted, however, there is more involved here than the personal

relationship between the appellant and the deceased. The estate of the deceased, the rights of property, the rights of his heirs at law, the rights of the executor and administrator to conserve the estate, to manage and administer the same—all these are involved in the situation before the court. Under these circumstances, notwithstanding the fact that we agree with appellant's position that the statute R. S. 39-224 does not apply to the case here, still we hold that the validity of the marriage may be attacked in an action such as is here brought where property rights are involved. Anyone who marries a person who is under guardianship or about to be placed under guardianship does so at his peril so far as the validity of the marriage is concerned. It is idle to argue that under such conditions the fact that a guardian has been appointed or that a verdict has been rendered adjudging the party feeble-minded does not serve as a caveat to the person who undertakes to marry the feeble-minded person.

Was the verdict of the jury in the probate court rendered on December 19, 1928, conclusive as to the mental condition of Mr. Diver on and after that date?

Senile dementia, the cause of Mr. Diver's feeble-minded condition, is a progressive disease. It continues to grow worse instead of better, according to the medical men who testified in this case. Since this court has held that on the date of its rendition the verdict of the jury is conclusive evidence of the fact so found, in view of the record we might well hold that from the nature of his affliction the status found by the jury is conclusively presumed to continue to the death of Diver. Such a holding is not necessary, however, to a decision of this case.

Appellant calls our attention to a very respectable line of cases heretofore decided by this court as follows: *Water Supply Co. v. Root*, 56 Kan. 187, 42 Pac. 715; *Rodgers v. Rodgers*, 56 Kan. 483, 43 Pac. 779; *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. 996; *State v. McMurry*, 61 Kan. 87, 58 Pac. 961; *Lower v. Schumacher*, 61 Kan. 625, 60 Pac. 538; *In re Wright*, 74 Kan. 406, 86 Pac. 460; *Simnitt v. Kneemeyer*, 124 Kan. 790, 262 Pac. 554; *Fuller v. Williams*, 125 Kan. 154, 264 Pac. 77. An examination of these cases reveals that this court has heretofore consistently held that once insanity or mental unsoundness is shown to exist it is presumed to continue. As stated in the case of *State v. McMurry*, supra:

"This presumption is, of course, a disputable one, and evidence of the actual condition of mind at any particular subsequent time is properly receivable, but on the question of sanity the record of a proceeding in lunacy is properly receivable for the purpose of proof of an insane state of mind at a particular time in question, and thereby to give rise to the presumption of its continuance from that date." (p. 88.)

In *Witt v. Heyen*, 114 Kan. 869, 221 Pac. 262, and again in the later case of *Fuller v. Williams*, supra, this court held that the adjudication of insanity on the date of the rendition of the verdict is conclusive evidence of insanity on that date. The rule as determined by this court, therefore, is that when a verdict is rendered by a jury in the probate court determining a person insane or feeble-minded the verdict upon the date of its rendition is conclusive evidence of the fact so found. As time goes on, however, following the determination of the insanity, on account of the fact that in many instances it is a well-known medical fact that people do recover from some of these afflictions, the wise and salutary rule has been adopted by our court as stated in the McMurry case. The presumption becomes a disputable one and "evidence of the actual condition of mind at any particular subsequent time is properly receivable."

In the case at bar the trial court followed the rules as established by our court. It received the verdict rendered in the probate court and later the verdict rendered upon an appeal to the district court. Both of these were conclusive evidence that on the dates upon which they were rendered, December 19, 1928, and February 8, 1929, respectively, M. R. Diver was a feeble-minded person. The court, however, did not confine the evidence to the two verdicts, but proceeded to and did hear numerous other witnesses. It received testimony as to the condition of Diver after both these verdicts were rendered, and upon the evidence so received made the findings of fact.

Now the principal question for our determination is to ascertain whether or not the trial court had any evidence before it upon which to make its findings.

The appellant strenuously complains of finding No. 10, which reads:

"During the hearing on the appeal from the probate court to the district court Mr. Diver did not appear to know what was going on and was suffering from advanced senile dementia."

The trial on the appeal from the probate court occurred after the marriage of appellant to Mr. Diver. The trial judge who heard the case now at bar was also the trial judge at the hearing had upon the appeal from the probate court. The trial upon the appeal began January 24, 1929, and the verdict of the jury was brought in on February 8, 1929. The appellant contends that inasmuch as the same judge who heard the appeal also heard this case, that finding No. 10 made by the trial court is based purely upon a conclusion which he formed from having sat and heard the proceedings upon the trial of the appeal and that there is no evidence in the record to support finding No. 10. Appellant contends that since no witnesses testified before the court in the instant case to the effect that Diver did not appear to know what was going on upon the hearing of the appeal, that therefore there was no evidence before the trial court upon which it could base finding No. 10. Is that true?

We are unable to set out all of the evidence upon which finding No. 10 might be based, but the following will suffice:

In the first place, there was introduced in the instant case the verdict of the jury rendered after the hearing of the evidence on appeal. This verdict of the jury found M. R. Diver "is a feeble-minded person and incapable of managing his affairs and that it is necessary that a guardian should be appointed for his person and estate." The trial court in this case had a right to consider that verdict, inasmuch as it was properly introduced in evidence. In addition to that the transcript of the testimony given by M. R. Diver himself upon the hearing on the appeal was introduced in evidence and the court had a right to and presumably did consider this evidence.

Diver's testimony showed that he could not remember what year he came to Wichita; he thought it might have been as long ago as 1850; he could not recall the date; that he did not remember how old he was when he came to Wichita. He stated that he had lived in Wichita about fifty years, which, if true, would establish the year of his arrival at about 1879. He testified that he was then (at the time he was testifying) operating a stage line in California from Los Angeles, but could not remember to what other point; that he got the stage-line contract in California in 1861. Later he testified that he was not operating it now, but that his brother Charlie was; that a few weeks ago (meaning a few weeks prior to his testimony) he had been awarded a stage-line contract between

Wichita and Wellington; that he did not know who was driving for him, but there were three or four different men; that he was using motor cars on this stage line—about four—but he could not give the names of any of the makes; that he bought some of them second-hand and some of them new; that he paid his men about $1.50 per day for driving these cars and that he boarded the men at the hotel, first one place and then another; that the government paid him for carrying the mail on this stage line; that they last paid him about a month or six weeks before; that they paid him every three months. It was clear from the testimony of others that Diver had no stage lines in California nor between Wichita and Wellington at the time he was testifying. He did not then own four automobiles. An inventory of his estate which was introduced in evidence showed that he did not own any automobile. This inventory was made and filed soon after his death and less than a month from the time he gave the testimony in question.

Relative to his property he testified that he had ten or a dozen lots on Water street; that they ran west from Water street across the river about a half mile west. He did have lots in that location, but they did not extend west across the river nor a half mile west.

He testified that he was then the husband of Mrs. Hatfield instead of Mrs. Wilhite, the appellant. When asked whether he knew what building he was in (the courthouse), he said he did not know; that he did not know in what part of town the building was. When asked, "What are we doing here at the present time, do you know?" he answered, "Swapping real estate, I guess." He testified in answer to other questions that he guessed they were trying to swap real estate for cars and money and most anything; that he came there that day to see if he could not trade a little; that he had made one trade since he came there that day. When asked what year it was he said 1920. (It was 1929.) He could not remember the month. He finally said it was the 22d of June. (The date was January 25, 1929.) He stated that the First National Bank at Wichita was located at First and Water streets, whereas it is at Main and Douglas. He located the Fourth National Bank as being north of the First National, when as a matter of fact it is east.

One witness testified that when the hearing was being had on the appeal he was sitting on the front row; that the defendant was near there as well as Mr. Diver; that he saw defendant kiss Mr. Diver, and Diver then turned and asked the witness who that woman was.

The jurors who heard the case on the appeal testified in the instant case, and one of them, Doctor Phares, a reputable physician of many years experience, testified that in his opinion Diver was suffering from senile dementia; that "there was no doubt in my mind about it." That testimony was properly before the court.

From the testimony of Mr. Diver which was given by him on the appeal from the probate court, and is briefly reviewed here, and the other testimony given by witnesses as to occurrences at the hearing on the appeal and his then condition, there was ample evidence before the court from which the court could properly conclude that "during the hearing on the appeal from the probate court to the district court Mr. Diver did not appear to know what was going on and was suffering from advanced senile dementia."

From the foregoing we conclude that finding No. 10 is supported by ample evidence which is properly in the record in this case, and that it is not based upon the opinion of the trial judge formed by reason of the fact that he presided at the hearing on the appeal.

Appellant also complains that the court erred in refusing to make a finding requested by defendant upon a controlling issue in the case, namely, Had Diver, if found to be a feeble-minded man or insane, ratified or affirmed, during lucid intervals, the marriage contract? Appellant contends that, granting Diver was mentally deficient, nevertheless if he had lucid intervals and during such intervals had ratified and affirmed the marriage, then the defendant should prevail. The defendant requested a finding which challenged the court's attention to this issue, and now complains that the court did not make a specific finding on the issue one way or the other.

It is true that the court did not in so many words specify that Diver did not have any lucid intervals after December 19, 1928, the date upon which the jury rendered the verdict in the probate court, but the court made finding No. 12, hereinbefore set out, which amply covers the issue upon which the appellant asked a finding. This finding is all-inclusive of the period beginning with the time of his marriage and ending at his death and is a determination of the fact that during all of that time Diver had the mind of a child of six to eight years and was incapable of making a marriage contract or understanding the obligations of a marriage contract or its effect upon himself and his property. That finding is a definite statement of fact that at no time subsequent to the marriage did he

have lucid intervals and at no time subsequent to the marriage was he capable of ratifying or affirming the marriage contract.

Against this conclusion, however, the appellant again forcibly urges that the trial court disregarded the uncontradicted evidence of fourteen witnesses who testified to statements made by Diver after his marriage in which he apparently understood that he was married and whom he had married and was well pleased with his new situation and with his wife. It is true that the testimony of these witnesses was not contradicted in the sense that anyone appeared to deny the statements were made by Diver which these various witnesses claimed were made. However, there is some testimony in the record the purport of which does contradict the effect of the testimony of these witnesses and from which the court might very well be justified in disregarding the testimony of these witnesses upon the question of whether or not Diver had sufficient mentality to ratify or confirm his marriage. There was testimony the effect of which, if believed, was that Diver did not have lucid intervals and did not have enough mentality to ratify or confirm the marriage. In sifting the testimony it became a question of the weight to be given the testimony offered, and it was solely a matter for the sound discretion of the court to decide which testimony it chose to give credence.

Dr. Paul Christman testified that he spoke to Diver several times about his marriage. That when he asked him if it was true that he was married Diver said he thought he was, and then when asked to whom he was married "he thought a long time and then said he did not remember." Diver said: "Name a few; maybe I will remember." That was on December 23, 1928, only a few days after the marriage ceremony had been performed. Doctor Christman testified he asked Diver other things relative to his marriage and that his answers were very much the same; that he was confused; that from his observation of Diver at various times and during the trial of the case on the appeal it was his opinion that Diver did not have sufficient mental capacity to understand and realize a marriage contract or its responsibilities and the effect upon himself and his property.

In addition to the above the court had before it the medical testimony of several doctors, some of whom testified they had examined Diver at the time of the hearing in the probate court and prior to

the rendition of the verdict on December 19, 1928, and since that time. These doctors testified that Diver was on December 19, 1928, suffering from senile dementia; that senile dementia is a disease which is progressive in nature and consequently grows worse instead of better. All of the medical testimony before the court clearly indicates that Diver's condition from and after December 19, 1928, never got any better than it was on that date. This being the situation before the court, we find that when he began to draw his findings in this case the trial judge started out with the verdict of the jury rendered on December 19, 1928, the day before the marriage; that that verdict was conclusive evidence of Diver's feeble-mindedness on December 19, 1928; that he was suffering from senile dementia; that his condition never improved thereafter, and the court from the evidence could very properly make finding No. 12.

The appellant further argues that Diver was not in fact feeble-minded. Attention is called, among other things, to the fact that he kept up his interest in civic affairs and voted in the November election; that he voted against Al Smith. Doubtless there are some ardent democrats in the state who would vigorously argue that that fact was conclusive evidence of his feeble-mindedness. On the other hand, a good republican might look upon it as the acme of intelligence. Taking the record as a whole, we feel that there was ample evidence upon which the trial court could base the findings made.

As bearing upon the contention of the appellant, the appellee calls our attention to the fact that on February 23, 1928, the appellant wrote a letter to the brother of M. R. Diver, in which she said, in speaking of Mr. Diver:

"He is in no condition to go anywhere. He feels pretty well for a few days and then he is bound to go downtown. Yesterday he seemed to feel all right and went down, but got lost and some one found him on the Douglas avenue bridge and took him to the hotel and phoned Mr. Wilhite, and he and my brother brought him home in a taxicab; and such has been the case for a long time. . . . We have to watch him constantly; he imagines he sees things and forgets what he says and does. . . . Mr. Diver did not give any Christmas presents at all; he thinks he is not able. . . ."

Furthermore, after the proceeding was instituted in the probate court the appellant was present in court with Mr. Diver every day during the time those proceedings were being conducted and was present in the court when the jury returned its verdict finding and

adjudging Diver a feeble-minded person, incapable of managing his own affairs, and that a guardian should be appointed for his person and estate. The next day thereafter she and other parties took Mr. Diver to Hutchinson and there applied for a marriage license at the office of the probate judge. A natural inference which the trial court could readily draw was that appellant knew that no marriage license would be issued to her by the probate court of Sedgwick county. She testified, among other things, that on that date (December 20, 1928) Mr. Diver asked her to marry him, but his conduct by no means indicates that he was a "Lochinvar come out of the west." Mrs. Wilhite, and not Mr. Diver, went to the probate judge's office to get the license. She gave a negative answer to the question: "Have you or has the person you are expecting to marry ever been afflicted with epilepsy, imbecility, feeble-mindedness or insanity?" One MacAlexander, and not Mr. Diver, arranged for the minister. All of these things taken together might very well have caused the trial judge to conclude that Mr. Diver did not exercise any volition in the matter, and from the fact that he was so passive under such conditions and on the occasion of such an important event in his life, that he did not know and did not comprehend or understand the relationship into which he was entering.

The appellant makes twenty-six specifications of error, and if we should attempt to discuss these *seriatim* this opinion, we feel, would become like Tennyson's famous brook. Suffice it to say that we have examined the record carefully and have considered the various specifications of error made by the appellant in connection with the record, and from such study and examination do not find any reversible error in this case.

The judgment is affirmed.