No. 34,436

Mary Levacich, *Appellee*, v. The Metropolitan Life Insurance Company, *Appellant*.

(96 P. 2d 649)

Opinion filed December 9, 1939.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany, Thomas M. Van Cleave, Jr.,* all of Kansas City, for the appellant.

*A. J. Herrod,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to recover on a policy of life insurance. Payment was resisted on the ground that a material change had occurred in the insured's condition of health between the time he applied for insurance and the time the policy was issued to him, and that he failed to advise defendant of that fact, thus defrauding the company.

The cause was tried by a jury. Plaintiff, widow of Frank Levacich and beneficiary of the insurance policy, established her prima facie case in short order by offering the policy in evidence, together with a certificate of the insured's death on July 20, 1936. The parties agreed that the required premiums had been paid and proofs of death duly submitted.

Defendant took up the burden of defense, and directed attention to Levacich's application for insurance, dated June 25, 1935, wherein certain questions were answered. In one of these Levacich stated

that his weight had neither increased nor decreased in the preceding two years. On June 27, 1935, Levacich submitted to a physical examination by defendant's medical adviser. The application and medical report was forwarded to defendant's home office for action.

Four days later, on July 1, 1935, Levacich called Dr. J. E. Barker to his home and told the doctor he was unable to swallow or retain food and was suffering from nausea and vomiting. Doctor Barker gave him a prescription. On July 15, Levacich called at Doctor Barker's office and stated that his condition had not improved, that he still could not swallow or retain food. Doctor Barker testified that he then suspected Levacich might have some malignant affliction and advised him to go to a hospital. However, the doctor did not reveal his suspicion of malignancy to Levacich, and the latter did not go to a hospital.

On July 26, 1935, defendant executed the policy sued on. It is inferable that it was delivered within a few days thereafter, but the exact date of delivery was not shown.

On August 2, Levacich again called on Doctor Barker and reported no improvement in his condition. The doctor again advised him to go to a hospital. On August 20, Levacich went to the Kansas University Hospital and was examined by Dr. I. F. Wilson, its instructor in surgery. This doctor testified that Levacich told him he had been unable to swallow for four months and had lost forty pounds in the preceding two months. The hospital record was offered in evidence. It showed the history of Levacich's case, which, in part, reads:

"UNIVERSITY OF KANSAS
(Bell Memorial)

Out Patient Department                    No. 124896

Name, Levacich, Frank.

. . . . . . . . . . . . . .

Date, Aug. 20, 1935.

. . . . . . . . . . . . . .

History taken by Wilhelmy, Ellis, M. D., Unable to swallow, began 4 mo., came on suddenly. Has lost 40 pounds last two months. No trouble of similar nature before.

August 27, 1935.

. . . . . . . . . . . . . .

Roentgenological findings.

. . . . . . . . . . . . . .

Conclusion: The change described is characteristic radiographically of a carcinoma at the lower end of the esophagus."

Doctor Wilson testified that he requested Levacich to enter the hospital, but he declined. Thereafter Doctor Barker saw Levacich occasionally until February 4, 1936. Then Levacich did enter the hospital. By that time his esophagus had completely closed. By heroic surgical methods and treatment he was kept alive until July 20, 1936, when he died.

The jury returned a verdict for plaintiff and made special findings of fact which may be summarized thus: When Levacich made application for insurance on June 25, 1935, he did not know he was suffering from any disease that seriously affected his health; that Levacich told Doctor Wilson on August 20 that he had lost forty pounds of weight in the preceding two months; that his health was good on June 25, but not good on July 26, and that a material change in his health occurred between those two dates; and that he was first afflicted with carcinoma (which caused his death) after July 1, 1935.

The usual post-trial motions were made and overruled, and defendant appeals.

The first contention is that the jury's finding that a material change in Levacich's health occurred between the date of his application, June 25, and the time of the delivery of the policy on or after July 26, and that his failure to make that fact known to the company on its delivery of the policy constituted a fraud which vitiated the policy. The provision which frequently appears in an insurance policy that it shall not be binding if it is delivered when the insured is not in good health was wanting in this policy. But defendant invokes a rule of law, the substance of which is that when an insurance policy is issued it is delivered in reliance upon the statements made in the application, like the theory of offer and acceptance. The theory is sound enough; but under Kansas law the statements contained in an application for insurance are merely representations —unless, indeed, the instrument expressly declares them to be warranties. (*Blades v. Insurance Co.*, 115 Kan. 120, 225 Pac. 1082; *Day v. National Reserve Life Ins. Co.*, 144 Kan. 619, 62 P. 2d 925.) An equally potent rule, corollary to the above, is that false statements or answers to questions in an application for insurance touching an applicant's condition of health do not avoid the policy unless he knew or should have known the truth of the specific matters inquired about, and that he answered falsely or in bad faith. (*Washington*

*Life Ins. Co. v. Haney,* 10 Kan. 525, syl. ¶ 5; *Mutual Life Ins. Co. v. Wiswell,* 56 Kan. 765, 770, 44 Pac. 996; 37 C. J. 454 *et seq.* See, also, "Life Insurance Representations and Fraud," in 6 J. K. B. 241-248.)

Here, however, the jury's special finding that Levacich did not know he was suffering from any disease that seriously affected his health when he applied for insurance on June 25, 1935, takes that point out of this lawsuit. Moreover, there was no evidence that Doctor Barker made known to Levacich his suspicion that some malignancy was at work on Levacich's system. The record suggests that Levacich was a foreigner of limited ability to speak or understand English. The company's own medical adviser certified on June 27, 1935, that Levacich's appearance was good. The same expert testified that a person might be afflicted with cancer and in its early stages would possibly not know it. Even Doctor Wilson, the instructor in the university hospital, testified that—

[A] "Man will never know he has a cancer of the esophagus unless someone tells him and [he] could be suffering from it for a short time and not know it and a man suffering from it in July not know it until August; he could apparently be in normal health in July and have the first symptoms in August. If the loss of weight is rapid, he is not likely to have pains very long."

Touching the assured's loss of weight in the two months prior to August 20, that would be since June 20, and would average a loss of two-thirds of a pound per day. That would amount merely to three and one-third pounds between June 20 and June 25, the date of his application for insurance. Such a small loss of weight was scarcely an indication that on the latter date Levacich knew or should have known that there was something serious the matter with him; and the same proportionate rate of loss of weight until the policy was delivered to him could only amount to a good talking point before a jury. It could not be judicially declared that Levacich did know or was bound to know that his health had suffered a change material to the risk after his application and before the delivery of the policy so as to bring the case within the rule of *Stipcich v. Insurance Co.,* 277 U. S. 311.

A careful perusal of appellant's brief, including its exhaustive citation of authorities, suggests nothing requiring discussion. No reversible error is made to appear, and the judgment is affirmed.