No. 34,330

James Clifford Page, *Appellee*, v. Daisy C. Van Tuyl, Guy Van Tuyl et al., *Appellants*.

(92 P. 2d 110)

Opinion filed July 8, 1939.

*Stanley Taylor, Gale Moss, R. C. Woodward* and *K. M. Geddes*, all of El Dorado, for the appellants.

*Guido E. Smith* and *Verni L. C. Smith*, both of Colby, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: The question in this appeal is whether a district court having jurisdiction of an action to partition the real property of an intestate estate must yield jurisdiction of the property to the administrator claiming dominion over it by virtue of an order of the probate court.

The material facts were these: The late W. A. Page, of Butler county, died intestate on May 2, 1938. He was the owner of some farming land in Butler county and some 1,600 acres of land in Thomas county. He also owned considerable city property in El Dorado, and certain oil leasehold and oil royalty interests in Butler county. An estimated value of all his assets, real, personal and mixed, was about $86,500. His liabilities may amount to $45,000 or more—a sum greatly in excess of the value of his personal estate. The delinquent taxes on the intestate's real property were in excess of $3,000 in May, 1938.

Page died a widower. He had six daughters and seven sons, all of whom except one son, Gordon Page, survived him. These, with four granddaughters who are the children of the deceased son, constitute his heirs.

Within a few days after the death of Page all of the heirs entitled to act as administrator filed in the probate court of Butler county their renunciation of such rights and petitioned that one Frank E. Lichlyter be appointed. On May 12, 1938, he was appointed and qualified, and at once entered upon his duties.

On May 16, 1938, the administrator filed in the probate court his application for an order that he be granted the right of possession, management and control of all the real property of the intestate. On the same day that court directed him to give notice of such application in two issues of an El Dorado weekly newspaper, on May 19, and May 26, and that it would be heard in the probate court on May 27 at 10 a. m.

On that date the court heard the application. The administrator gave sworn testimony touching the condition of the estate, its income, liabilities, and other pertinent facts—following which showing (which was unopposed) the probate court made the following order:

"To protect the rights of creditors, heirs and other distributees of the estate of W. A. Page, deceased, the administrator thereof, Frank E. Lichlyter, be and he is hereby given the right of possession, management and control of the interest of W. A. Page, deceased, in and to all real estate owned by said W. A. Page at his death and particularly to all real estate described in said aforementioned application for possession of real estate." ·

Soon thereafter the administrator took possession of the Thomas county land and leased the same to tenants for the benefit of the estate.

On May 23, 1938, seven of the sons and daughters of W. A. Page, deceased, filed in the probate court of Butler county a petition for the probate of a copy of an alleged lost will, but no further action has yet been taken on that petition.

On August 8, 1938, the plaintiff James Clifford Page, a son and heir of W. A. Page, resident of Thomas county, commenced an action in partition in the district court of Thomas county, setting up the death of his father while a resident of Butler county, the appointment of Lichlyter as administrator by the probate court of Butler county, and that he was the duly acting, authorized and qualified administrator. All the heirs were impleaded, together with their spouses, also the guardian for certain of the heirs who were minors, and their respective interests in the estate were set forth.

Plaintiff alleged that at the death of W. A. Page he was the owner of 1,600 (described) acres of land in Thomas county, also owner of

lands and town lots in Butler county, and of divers and sundry property interests in Butler county.

Plaintiff also alleged that the estate of W. A. Page "is now in the process of being probated in the probate court of Butler county," that certain claims against the estate had been filed in that court, and that—

"Upon partition of the real estate set out herein there should be transferred to the probate court of Butler county, Kansas, and to the estate of the said W. A. Page, deceased, sufficient money to pay said claims if the personal property is insufficient to pay said claims."

Plaintiff's petition concluded with the usual recitals and prayer of an action in partition.

Some time later the administrator by his attorney, and two groups of the heirs by their respective attorneys, by special appearances in the district court of Thomas county, filed motions to dismiss the partition action. These motions recited at length the facts set out above, and alleged that by virtue of the order of the probate court of May 27, 1938, that court had drawn to itself and its administrator all the property of the estate of W. A. Page, to the exclusion of every other court, and that the probate court's jurisdiction had been so acquired prior to the commencement of plaintiff's action in partition in the district court of Thomas county.

The administrator, Frank E. Lichlyter, was called as a witness on behalf of the movants and gave testimony in accord with the allegations of the motions to dismiss. No material dispute of fact appeared.

On December 8, 1938, the trial court overruled the motions to dismiss, and this appeal followed.

The correctness of the trial court's ruling turns on the proper significance to be attached to chapter 219 of the Laws of 1937 (G. S. 1937 Supp., 22-735 to 22-739). Prior to its enactment we had always been faced with the possibility (and sometimes the actuality) of the concurrent pendency of a partition suit in the district court by heirs and devisees of a dead man's real property while the administration of his estate was still pending in the probate court. In *Mackey v. Mackey*, 99 Kan. 433, 163 Pac. 465, Id. (rehearing), 100 Kan. 63, 163 Pac. 465, a situation of this sort was considered. We said:

"The plaintiff contends that the district court usurped the jurisdiction of the probate court as to the residence property. We think not. The pending administration of Bridget's personal estate did not necessarily bar the heirs

from their right of immedate partition of the realty. (*Raynesford v. Holman,* 68 Kan. 813, 74 Pac. 1128; *O'Keefe v. Behrens,* 73 Kan. 469, 479, 480, 85 Pac. 555.) Cases there may be where partition is wisely deferred until the personal estate is settled, for it may happen that the realty may have to be heavily drawn upon to satisfy the claims against the personal estate. (30 Cyc. 198.) But even in such cases, it is not necessarily error to partition the realty, because it will not be relieved from satisfying the claims against the personal estate on that account." (p. 434.)

This rule of law was adhered to until the statute of 1937 was enacted. (*Overlander v. Overlander,* 115 Kan. 478, 223 Pac. 304; *Barnes v. Barnes,* 140 Kan. 612, 38 P. 2d 93.)

For several years prior to 1937 the Kansas Judicial Council gave protracted study to this general subject. In its quarterly bulletin for December, 1934, pp. 74-76, appears a discussion and two proposed legislative enactments dealing with it. It is there said:

"All of these difficulties can be avoided by a statute providing that the administrator shall take charge of and administer nonexempt real property substantially in the same way as he administers nonexempt personal property. The laws of many states so provide. No reason suggests itself to us why statutes making such provisions should not be enacted in this state. Simplicity and certainty of the law with respect to the authority of an administrator and his duties and with respect to what property of decedent is available for the payment of his debts will avoid much confusion and unnecessary litigation. To correct our statutes in these regards we propose two measures." (p. 74.)

Then follow drafts of two proposed statutes, the second of which corresponds in its essential features with the statute of 1937. The Judicial Council followed this with further comment in its bulletin issued in April, 1935, p. 18, and submitted another proposed draft of a bill which corresponds still more closely with the act of 1937. The same subject is again discussed and a similar draft of a bill appears in the December, 1936, issue of the bulletin at pp. 191-193; and in the bulletin for April, 1937, pp. 9, 10, the Judicial Council chronicles the gratifying fact that its labors on this theme had eventually become successful, and that its proposed measures for the correction of the anomalies of the law had been enacted to become effective on its publication in the statute book (Laws 1937, ch. 219).

The provision of the new statute of present concern reads:

"The administrator or executor (unless other provision is made by a will) shall have the right to possession of all the personal property of decedent chargeable with the payment of debts; he shall also have the right to the possession of all the real property of decedent chargeable with the payment of debts if and when an order of the court is made giving him such right of

possession; but such an order shall be made only upon application therefor and a hearing upon notice as provided by law for the hearing of a petition for the sale of real property, and a finding by the court that such an order is necessary for the protection of the rights of creditors, or of heirs, or other distributees. The administrator or executor shall control and manage the property in his possession under the directions and orders of the probate court. When directed or ordered to do so by the court the administrator or executor may lease the real property under his control, or any part thereof, for a term not exceeding one year, and shall receive the rents, issues and profits therefrom, and by like direction or order may keep up the repairs, insurance and taxes, on the real property. . . ." (G. S. 1937 Supp. 22-736.)

Of less present importance, but still somewhat pertinent, is section 4 of the statute. It reads:

"Whenever the court shall be satisfied that any real estate need not be sold or leased for the payment of debts of the estate, legacies, or costs of administration, the executor, or administrator may be ordered to deliver possession of the same to those entitled to it as heirs or devisees." (G. S. 1937 Supp. 22-738.)

In passing, it may be noted that in plaintiff's petition to partition the real property it was suggested that out of the proceeds of the sale of the real estate in partition the district court should transfer to the probate court sufficient money to pay the debts of the deceased. This is a right-about-face to the text and purpose of the new statutes. It is the probate court which in its discretion may turn over to the heirs and devisees any realty not necessary to be sold or leased for the payment of debts, legacies and cost of administration. (See *Wright v. Simpson,* 142 Kan. 507, syl. ¶ 1, 51 P. 2d 1.)

It is needless to extend discussion on the legal question at issue. The history of the proposed legislation and its eventual enactment make it clear that the legislature intended to and did make a very material change in the law relating to the disposition of decedent's estates, and to that end it conferred on the probate court original and exclusive jurisdiction of a decedent's real estate whenever the welfare of the estate under administration so requires, and the order of the probate court on that subject cannot be gainsaid in another action nor before another court, except by a direct appeal.

It follows that the motion to dismiss the partition action in the district court was proper and should have been sustained. The judgment must therefore be reversed with instructions to that effect. It is so ordered.

ALLEN, J. (dissenting): The general rule is that a tenant in common who concurrently owns an interest in land subject to an outstanding term of years has the power to compel partition.

Restatement of Property, section 174, and comment *b* thereunder, read as follows:

"When an interest in land concurrently owned would be possessory but for an outstanding estate for years or from period to period or at will, and the creator of the interest has not manifested effectively an intent to exclude the power to partition, then a joint tenant or a tenant in common or a tenant by the entirety in a concurrently owned interest has the same power to compel partition and the same liability to be subjected thereto as he would have if no such estate for years or from period to period or at will existed, except that any partition so made leaves unaffected the estate for years or from period to period or at will.

.     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"*Comment: b.* The rule stated in this section applies only to interests in land and rests, in part at least, upon the historical differentiation between seisin and possession. The tenant for years or from period to period has possession but never had seisin. The seisin remained undisturbed in those who owned the land subject to such term. Partition was available to those seised in a concurrent ownership and hence the absence of possession until after such a term (see § 154, comment *f*, defining a reversion, and § 156, comment *e* defining a remainder, so as to include an interest subject to a non-freehold interest) was outweighed by the presence of seisin. If, however, an outstanding estate for life existed, the concurrent owners subject thereto no longer were seised of the land and the actual futurity of the interests after such an estate was recognized. This differentiation between the effects of an outstanding estate for years and of an outstanding estate for life corresponds to a real difference of practical consequences. When owners of land are both seised and possessed of land they derive therefrom recurrent economic benefits in the form of its profits. When owners of land are seised of land but it is in the possession of tenant for years or from period to period the same normally is true although the recurrent economic benefits now take the form of rent. When owners of land are neither seised nor possessed because of an outstanding estate for life, the derivation of recurrent economic benefits during the continuance of the estate for life is not usual. Thus the rule stated in this section allows partition as between concurrent owners who normally derive recurrent economic benefits from land either in the form of profits or of rents but does not recognize an equal need for the remedy as between persons for whom such derivation normally is postponed to the future."

Ordinarily a term of years is created by a lease with a reservation of rent. But a term of years may be devised to a person under a will, rent free. In such case there would be no compelling reason for partition. However, in *McCullough v. Finley*, 69 Kan. 705, 77 Pac. 696, parol partition between fee owners subject to a life estate was upheld.

If, then, partition is allowed among concurrent owners where there is an outstanding term of years—and whether the lease is for a long or short term (see cases cited 47 C. J. 293)—what substantial reason can be assigned why partition should not be allowed in the case at bar? The sections enacted in 1937—22-735, 22-736 and 22-738—do not purport to amend the partition statutes. Under certain circumstances the executor or administrator is given the possession of the real estate owned by the deceased person at the time of his death, which is to be controlled and managed under the direction and orders of the probate court for the protection of the rights of creditors, or the heirs or other distributees. As the "possession" given the executor or administrator is not under a claim of title or ownership it merely indicates the real estate is placed in the care and custody of such appointee as a mere bailiff or custodian. Under section 22-738 when it appears the land is not needed for the payment of debts, possession is to be returned to the heirs or devisees. The custody arrangement, then, is for the sole benefit of the creditors of the estate. The evident purpose of the statute was to conserve the estate pending the administration, not to create a receivership for an indefinite duration. If partition may be had where there is an outstanding lease of twenty or forty years, where the tenant has an estate in the land, why should it be denied when the custody is given a bailiff for the temporary purpose of the administration? If partition be made in kind or by sale the outstanding debts must be paid. The majority opinion quotes *Mackey v. Mackey*, 99 Kan. 433, 163 Pac. 465. But what is wrong with the doctrine there announced? If the debts are paid the creditor cannot complain. Cannot the district court—a court having general equitable jurisdiction—be trusted to make appropriate orders?

In early times the common-law courts allowed partition among coparceners—persons who became concurrent owners by descent. By statute the right to partition was extended to joint tenants and tenants in common. (47 C. J. 295.) In the course of time the clumsy procedure for partition under the common-law writ was largely supplanted by the flexible system developed in the courts of chancery. The partition statutes of Kansas, G. S. 1935, 60-2101 to 60-2114, were enacted in view of the rules and procedure of equity. These statutes do not purport to set up a comprehensive enactment, forming a complete and self-contained system. A review of the decisions of this court reveals that the rules and principles of

equity constitute an unfailing reservoir "to fill out the silent spaces in the enacted statute."

To strip the district court of jurisdiction in partition proceedings because a statute authorizes the executor or administrator to rent the land pending administration, cannot be justified by any reason of convenience or necessity.