No. 34,713

NETTIE TOEPFFER, *Appellee,* v. EDWARD R. TOEPFFER, and D. A. HINDMAN, as Guardian of the Estate of Edward R. Toepffer, and as Guardian ad litem of Edward R. Toepffer, *Appellants.*

(101 P. 2d 904)

Opinion filed May 4, 1940.

*D. A. Hindman,* of Stockton, for the appellants.

*Scott Pfuetze, Hal E. Harlan* and *A. M. Johnston,* all of Manhattan, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for a divorce, custody and support of minor children, and for permanent alimony. The action was filed in the district court of Riley county. The estate of the defendant, Toepffer, consisted primarily of a substantial inheritance. By reason of defendant's mental condition, a guardian had been appointed for both his person and estate in the probate court of Rooks county in 1906. The guardian of his person was later discharged, and in 1933 the defendant, D. A. Hindman, became guardian of the estate of defendant, Toepffer, by virtue of appointment in the probate court of Rooks county. Hindman was serving in that capacity when the instant action was filed and tried. When the divorce action was instituted in February, 1937, and for some time prior thereto, the husband resided in the state of Missouri. Publication service was had upon him. That service was approved by the trial court. The trial court found the defendant, Toepffer, had also entered his general appearance. When the instant action was filed, D. A. Hindman, guardian of defendant's estate, was appointed guardian *ad litem.* Hindman filed separate answers in his capacity as guardian of the defendant's estate and as guardian *ad litem.* His answer in the latter capacity consisted of a general denial of all averments contained in plaintiff's petition. The defendant did not appear at the time of the trial and the guardian *ad litem* defended the action.

The divorce was sought on the grounds of extreme cruelty, gross neglect of duty, and habitual drunkenness. It was granted upon the ground of extreme cruelty. There were three children, but one daughter was married prior to the rendition of judgment. The court awarded plaintiff the care, custody and control of the two minor children, made an order for their support, maintenance and education, and an order for the temporary support and maintenance of the plaintiff out of funds in the hands of the guardian of defendant's estate. The court awarded permanent alimony to the plaintiff to the extent of one-half of defendant's property, both real and personal. The order for temporary support of the wife was made effective until she came into possession of the property awarded to her as alimony.

The appeal is by D. A. Hindman in his capacity as guardian of defendant's estate and as guardian *ad litem.*

It is conceded the testimony was ample to support the charge of extreme cruelty, provided the condition of defendant's mind was such as to enable him to know the nature and understand the consequences of his marital wrongs at the time they were committed.

In view of specific findings of fact made by the trial court touching the mental condition of the defendant, it will not be necessary to narrate the evidence in detail upon that subject. A few additional facts are necessary in order to clearly understand the legal questions presented for review.

The defendant was declared to be a person of unsound mind by the verdict of a jury and decree of the probate court of Rooks county in 1903 and again in 1906. Following the first decree, defendant became an inmate of the state hospital for the insane at Topeka, Kan. He remained there several months and was discharged. The record does not disclose whether he was discharged as improved or as restored. It does not appear he was sent to the state hospital following the hearing in 1906. At that time his mother, Mary A. Toepffer, was appointed guardian of both his person and estate in the probate court of Rooks county. In the year 1927 she was discharged as guardian of his person, but continued as guardian of his estate until her death on July 7, 1933. During the same month, D. A. Hindman was appointed guardian of defendant's estate. There was no guardian of his person after November 18, 1927.

The plaintiff and Edward R. Toepffer were married February 19, 1917. The petition in this action was filed in February, 1937. The

judgment was rendered October 27, 1939. Plaintiff, as stated, married the defendant in 1917. It is admitted plaintiff was informed, prior to marriage, of the facts touching the alleged mental condition of the defendant. It is not contended defendant was insane at the time of the marriage and that the marriage contract was a nullity. There was an abundance of evidence of extreme cruelty covering a long period of years, including the years immediately preceding the filing of the petition for divorce. The last finding of the probate court of Rooks county touching defendant's mental condition was in 1906. That was thirty-one years before the petition for divorce was filed. There was conflicting testimony concerning defendant's mental condition between 1906 and the date of the instant trial. There was testimony by both lay and expert witnesses to support the belief that defendant, at the time of the commission of the marital wrongs complained of, was of sound mind and knew the nature and consequences of his marital wrongs. A few additional facts touching his sanity may be noted. In the year 1930 defendant was charged with an attempt to rob a drugstore at Stockton, Kan. In that trial, a commission of three doctors was appointed by the court to examine his mental condition. The commission found that while his mental condition at that time was not such as to enable him to defend himself, he was not insane. In 1937 he was arrested for the offense of impersonating a federal investigator in the narcotic service in Kansas City. Defendant was a narcotic addict and by means of impersonating a federal officer in the narcotic service he obtained the desired narcotics for his own use. In the course of the trial on that charge, his mental condition was again investigated and he was found to be a sane man and capable of defending himself. Among the specific findings of the trial court is the following:

"The court further finds that at the time of the commission of the marital wrongs complained of in plaintiff's petition and bill of particulars, the defendant, Edward R. Toepffer, was of sound mind and knew the nature, character and consequences of the marital wrongs so committed by him; the court further finds that as of the date of the filing of the petition herein and at all times since, the said defendant, Edward R. Toepffer, has been of sound mind and that he understands the nature of this proceeding."

There is abundant evidence to support the finding, and on review this court is not concerned with evidence which supports a contrary finding. (*Settle v. Glenn,* 147 Kan. 502, 78 P. 2d 57.)

The first question presented is whether an adjudication of in-

sanity is conclusive for all purposes until sanity has been declared restored, or whether the adjudication creates a presumption of continued insanity which may be rebutted by other competent evidence. Counsel for the respective parties concede we have no statute upon the specific subject. We have held that where the fact of insanity has been established, the presumption of insanity continues until the subject is shown to have been restored to reason. (*Lantis v. Davidson,* 60 Kan. 389, 56 Pac. 745; *Johnson v. Gustafson,* 96 Kan. 630, 152 Pac. 621.) An adjudication of insanity is conclusive evidence of insanity on the date of the rendition of the verdict. (*Witt v. Heyen,* 114 Kan. 869, 221 Pac. 262; *Fuller v. Williams,* 125 Kan. 154, 264 Pac. 77; *Fourth Nat'l Bank v. Diver,* 131 Kan. 113, 289 Pac. 446.) While we have held that when insanity or mental unsoundness is shown to exist it is presumed to continue, we have just as definitely held the presumption is a disputable one, and may be rebutted by evidence of the actual condition of mind at any particular subsequent time. (*State v. McMurry,* 61 Kan. 87, 58 Pac. 961; *Fuller v. Williams,* supra, 165; *Fourth Nat'l Bank v. Diver,* supra, 124, 125.) These citations are not intended as being exhaustive. The rule that the presumption of continuing insanity, created by a verdict of insanity, may be rebutted by any competent evidence of a subsequent sound condition of mind at a particular time, appears to be well established. (32 C. J. 757, § 561; 758, § 562; 647, § 228; 68 C. J. 437, § 32; 9 R. C. L. 324, § 99; 14 R. C. L. 621, § 73.) It follows a divorce may be granted where the person charged with a marital wrong was capable, at the time, of comprehending and understanding the wrong he was committing. (9 R. C. L. 375, § 166; 14 R. C. L. 620, § 71; Note, 34 L. R. A. 161, 163.)

The only other question presented by D. A. Hindman, guardian of defendant's estate, is whether the alimony judgment does not invade the jurisdiction of the probate court of Rooks county, which court has jurisdiction of the defendant Toepffer's estate. We do not think so. The probate court had no jurisdiction of the action for divorce and alimony. The district court had exclusive jurisdiction of that action. That court was required, where the divorce was obtained by reason of the husband's fault, to allow such alimony to the wife out of the husband's real or personal property, or both, as it deemed just and equitable. (G. S. 1935, 60-1511.) The guardian of the defendant's estate was a proper party defendant in the action. It was his duty to properly care for and con-

serve the estate of his ward in such an action. (*Fourth Nat'l Bank
v. Diver*, supra.) He filed an answer in that capacity, as well as
in his separate capacity of guardian *ad litem*. All parties in interest
were before the court. The decree of divorce was valid and the
alimony judgment became a valid claim against the estate of the
defendant, Toepffer. The establishment of that claim, in a court
of exclusive jurisdiction, in no wise interfered with the management
and supervision of the ward's estate by the probate court. A few
illustrations may be helpful. It is definitely settled in this state
that the defendant, Toepffer, if in fact insane, would have been
civilly liable in damages for his torts. (*Seals v. Snow*, 123 Kan. 88,
254 Pac. 348.) An action to determine his liability could not, of
course, be tried in the probate court. It could not be contended
seriously that a judgment rendered by the district court in such an
action would constitute an invasion of the jurisdiction of the probate
court over the estate of the ward. Numerous actions against ad-
ministrators or executors of decedent estates, over which probate
courts have no jurisdiction, must be instituted and tried in district
courts. The judgments therein rendered do not constitute an in-
vasion of the jurisdiction of the probate court. They merely es-
tablish the validity or invalidity of the claim. If the claim is found
to be invalid, that ends the matter. If, on the other hand, the
validity of the claim is established and judgment is rendered there-
for, the judgment may then be filed in the probate court for allow-
ance and payment in accordance with the regular process of ad-
ministering the ward's estate. That procedure does not constitute
an encroachment upon the jurisdiction of the probate court. The
case of *Page v. Van Tuyl*, 150 Kan. 285, 92 P. 2d 110, is cited in
support of the contention that the jurisdiction of the probate court
was invaded by the alimony judgment in the instant case. That
case involved the right of an heir or devisee to bring an action in
the district court to partition real estate during the process of ad-
ministration of the decedent's estate in the probate court. By virtue
of chapter 219, Laws 1937 (G. S. 1937 Supp., 22-735 *et seq.*), the
administrator was entitled to the possession of all real property of
the decedent chargeable with the payment of debts if and when an
order of the probate court was made, pursuant to the statute, giving
the administrator such right of possession. Such an order was made
in that case. It was held the statute conferred on the probate court
original and exclusive jurisdiction of the decedent's real estate, dur-

ing the pendency of the administration, whenever the welfare of the estate under administration so required. To have permitted an heir or devisee to obtain a division and possession of that property by means of an action in the district court, during the pendency of the administration of the estate in a court which had original and exclusive jurisdiction over the property for the purpose of administration, would have constituted a clear invasion of the jurisdiction of the probate court. The Page case is not in point. In the oral argument before this court, counsel for plaintiff distinguished the instant case from our recent decision in *Watts v. Watts*, 151 Kan. 125, 98 P. 2d 125. The case is clearly distinguishable upon several grounds. The guardian of defendant's estate does not contend it is in point. We need, therefore, not dwell upon it.

There is no error in the record, and from a careful examination of the facts we are convinced a fair and just conclusion was reached by the trial court. The judgment is affirmed.

ALLEN, J. (concurring specially): I agree with the decision. I agree to all that is said in the opinion except in the attempt to distinguish *Watts v. Watts*, 151 Kan. 125, 98 P. 2d 125. When opportunity offers and time permits I hope to express my views on the ruling in the Watts case.