No. 37,075

In the Matter of the Estate of Evelyn Lena Strohmeier Tuggle, Deceased (RALPH STROHMEIER, Executor, *Appellant*, v. JACK W. TUGGLE, Respondent, *Appellee*).

(192 P. 2d 181)

Opinion filed April 10, 1948.

*Joe T. Rogers,* of Wichita, argued the cause, and *Roy L. Rogers,* of Wichita, was with him on the briefs for the appellant.

*W. A. Kahrs,* of Wichita, argued the cause, and *Austin M. Cowan* and *Robert H. Nelson,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: The principal question presented on this appeal

is the validity of the marriage of a man, who some years before had been adjudged insane, to a woman under the age of forty-five. The question arose in this way: On January 1, 1946, Mrs. J. W. Tuggle made and executed her will in which she directed that all her just debts and funeral expenses should be paid, and gave "to my husband, Jack W. Tuggle, the sum of five dollars ($5)," and gave all of the remainder of her property to her mother, Dora F. Strohmeier, and designated her father, Ralph Strohmeir, as executor. On April 24, 1946, Ralph Strohmeier filed in the probate court of Sedgwick county a petition for the probate of the will, in which he alleged the testatrix died April 18; that she was a resident of Sedgwick county; that she is survived by the following named persons, who are her sole heirs at law: Jack W. Tuggle, Ralph Strohmeier and Dora F. Strohmeier, all of Sedgwick county, and also named the same persons as legatees and devisees under the will; alleged the probable value of her estate was $10,200; that an executor should be appointed and Ralph Strohmeier was a proper and suitable person to whom to grant letters testamentary. To this petition J. W. Tuggle filed an answer in which he alleged that he is the surviving spouse and heir of the testatrix and objects to the probate of the will for the reason it is invalid upon the ground that the testatrix was induced to sign the will by undue influence; that she had no independent advice, and that she was incapable, by reason of her health, to make disposition of her property. To that the executor filed a motion to strike that answer for the reason that "J. W. Tuggle is not the surviving spouse nor an heir-at-law of" the testatrix, and in support of the motion alleged he would show that J. W. Tuggle "is now and has been at all times since their purported marriage an insane person," and alleged that the fact of such insanity was unknown to the testatrix and became known to the executor after he filed his petition to probate the will. The probate court heard evidence, including that of J. W. Tuggle, in opposition to the probate of the will, and found that the instrument offered for probate was duly executed according to law and "that the decedent at the time of the execution of said will was a person of sound mind, of full age and under no restraint and that said will is valid and genuine." The court admitted the will to probate and made an order appointing Ralph Strohmeier as executor. He qualified by taking the oath and giving bond. From the judgment of the court J. W. Tuggle appealed to the district court.

In the district court no new pleadings were filed. Counsel for the executor contended that J. W. Tuggle had no right to contest the will for the reason that he had never been the husband of the testatrix; that years ago he was adjudged insane in Oklahoma and committed to an institution, and that he later came to Kansas and was adjudged insane in the probate court of Cowley county and sent to the Osawatomie state hospital, where he remained for some time, and later married the testatrix while still under the judgment of insanity.

"The point being that he was mentally of such condition that he could not contract a marriage at that time; that he was in such mental condition that he did not know or could not understand the nature of the contract. . . . Further, we contend that under our statute that prohibits the marriage of any party who is epileptic or afflicted with insanity, which provides that they shall not marry except where they marry a woman over forty-five years of age, and forbids and renders the marriage null and void. We take the position that not being the legal husband and not entitled to any of the marital rights arising by reason of the marriage that he cannot contest the will or contest the probate of the will when his only interest is that of a donation or gift."

After a hearing, at which we are told a number of witnesses testified, the court made findings of fact and conclusions of law, which may be summarized or quoted as follows: James W. '(Jack) Tuggle was born June 4, 1913, a resident of Tulsa, Okla. On March 6, 1933, after he had graduated from high school, he was adjudged insane in the county court of Tulsa county and committed to the Eastern Oklahoma state hospital for the insane located at Vinita. There was a rehearing on March 14 and he was committed to Duke's sanitarium at Guthrie, Okla.; but on April 12, 1933, by virtue of an order of the county court of Tulsa county he was recommitted to the state hospital at Vinita, from which institution he was discharged on April 16, 1934. The record does not disclose when he actually left that institution, but on January 6, 1934, his father, J. A. Tuggle, filed an affidavit of lunacy in the probate court of Cowley county, Kansas, where the next day he was adjudged insane and committed to the Osawatomie state hospital, where he remained until he was discharged from that institution by the superintendent, F. A. Carmichael, on September 8, 1934. The court findings continue:

"3. After James W. Tuggle was discharged from the State Hospital at Osawatomie, Kansas, he returned to the custody of his mother in Oklahoma, and subsequently attended the University of Oklahoma, for a short time until he was no longer financially able to continue, and returned to his mother at

Tulsa, Oklahoma, and secured a position with J. C. Penny & Company, at Oklahoma City. He worked for that company from the latter part of 1934 until 1939, during which time he was a highly successful salesman for said company, and in fact, won a sales contest during that time excelling all others in sales ability and secured a reward trip to California at the company's expense.

"4. Following his employment at J. C. Penny and Company at Oklahoma City, Jack W. Tuggle worked for the Esskay Manufacturing Company at San Antonio, Texas, as a traveling representative. He thereafter secured a position at the Spines Clothing Company, Wichita, Kansas, where his services were very satisfactory. He later secured a position as time keeper for a construction company at Junction City, Kansas, where he remained until the time he married Evelyn Lena Strohmeier, a female person under the age of forty-five years, on March 19, 1941.

"5. Subsequent to the marriage, and on November 20, 1941, Tuggle secured a position with the Beech Aircraft Corporation, Wichita, Kansas, in the engineering department and remained with that company until August 26, 1944.

"In September, 1942, he received an award of merit from the company, having satisfactorily completed a course in blue print reading, and later, on April 21, 1943, was issued a certificate as having taken and satisfactorily completed an engineering drawing extension course in the University of Kansas."

Paragraphs 6 and 7 pertain to matters not essential to the legal question involved.

"8. No action was ever taken by any person on behalf of James W. Tuggle subsequent to his adjudication of insanity to have him restored.

"From the time of his employment with the J. C. Penny Company down to, and including the time of the trial of this action (June 23, 1947), Jack W. Tuggle showed no evidence of epilepsy, imbecility, feeblemindedness or insanity, and his acts and conduct were those of a sane person.

"At the time he entered into the marriage contract on March 19, 1941, he was free from insanity or any other statutory mental affliction.

"9. That at the time Evelyn Strohmeier Tuggle made and executed her will, on the 1st day of January, 1946, she was of sound mind and disposing memory, and knew the extent of her property and the disposition she desired to make of it; and that her father, Ralph Strohmeier, did not exercise any undue influence or compulsion over said Evelyn Strohmeier Tuggle."

The court made the following conclusions of law:

"1. That the marriage between Jack W. Tuggle and Evelyn Strohmeier, on March 19, 1941, was valid.

"2. Jack W. Tuggle was the legal husband of Evelyn Strohmeier Tuggle at the time of her death, and entitled to a one-half interest in her estate.

"3. That Evelyn Strohmeier Tuggle was of testamentary capacity at the time of the execution of the will.

"4. That Evelyn Strohmeier Tuggle was not under any undue influence at the time of the execution of the will.

"5. That the will is valid, in so far as it conveys to Dora Strohmeier, an undivided one-half interest in the estate of Evelyn Strohmeier Tuggle."

The executor moved to strike, as "contrary to the law," the court's second conclusion of law. This motion was overruled, as was also his motion for a new trial.

Upon the findings of fact made by the trial court counsel for appellant ask us to hold that the marriage of James W. Tuggle and Evelyn Lena Strohmeier of March 19, 1941, was void and of no legal effect. To sustain that view counsel rely heavily upon our statute (G. S. 1935, 23-120), the pertinent portions of which read:

"No woman under the age of forty-five years, or man of any age, except he marry a woman over the age of forty-five years, either of whom is epileptic, imbecile, feeble-minded or afflicted with insanity, shall hereafter intermarry or marry any other person within this state. It shall be unlawful for any person to marry any such feeble-minded, imbecile or epileptic person, or anyone afflicted with insanity."

It is pointed out that section 23-121 provides that no marriage license shall be issued to such person; that section 23-122 provides that no one shall perform the marriage ceremony for such person; that section 23-123 provides a penalty for anyone who knowingly violates any of the three preceding sections, and that section 23-124 provides that the children of such a marriage shall be considered legitimate even though the marriage might be set aside.

The point contended for by counsel is not well taken. We note the statute relied upon does not specifically say that a marriage between the persons referred to therein shall be void, as does our statute respecting incestuous marriages (G. S. 1935, 23-102), or our statute respecting marriage within six months after a decree of divorce (G. S. 1935, 60-1512). In this state it is well settled that an adjudication of insanity is conclusive proof of the insanity as of the date of the adjudication and prima facie evidence of insanity for the time prior to the adjudication which the jury or commission finds insanity had existed. (*Witt v. Heyen,* 114 Kan. 869, 221 Pac. 262.) It is also well settled in this state that a presumption of continuing insanity may exist for a period after the adjudication. The strength of that presumption as applied to a particular case depends upon the facts. Here the trial court specifically found:

"At the time he (James W. Tuggle) entered into the marriage contract on March 19, 1941, he was free from insanity or any other statutory mental affliction."

Appellant does not contend that this finding was not sustained by the evidence. Even where one has been adjudged insane and

there has been no adjudication of his restoration, the fact that he at a definite later time was sane may be established by competent evidence. In *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. asylum." (Syl. ¶ 3.)

"An adjudication of insanity, followed by the commitment of the patient to an asylum for the insane, does not create a conclusive presumption of the continuance of insanity several years after the discharge of the patient from such asylum." (Syl. 3.)

In the opinion the court cited as supporting this rule *Water-Supply Co. v. Root*, 56 Kan. 187, 42 Pac. 715, and *Rodgers v. Rodgers*, 56 Kan. 483, 43 Pac. 779, which were to the same effect. The case was followed and applied in *Lower v. Schumacher*, 61 Kan. 625, 60 Pac. 538; *Simnitt v. Kneemeyer*, 124 Kan. 790, 791, 262 Pac. 554, and in *Fourth Nat'l Bank v. Diver*, 131 Kan. 113, 124, 289 Pac. 486. In *Toepffer v. Toepffer*, 151 Kan. 924, 101 P. 2d 904, the pertinent syllabus reads:

"An adjudication of insanity creates a presumption of continuing insanity, but the presumption is a disputable one and may be rebutted by any competent evidence of a subsequent sound condition of mind at a particular time."

This was a divorce action brought by the wife upon the ground of extreme cruelty. The record disclosed that defendant had been adjudged insane in 1903 and was confined for several months in the state hospital; that he was again adjudged insane in 1906; that the parties were married in 1917; that three children had been born to them, and that the divorce action was filed in 1937. While it was not contended that the marriage was void because of the previous adjudication of the insanity of the husband, the court had occasion (p. 928) to review the subject here involved, and did so as follows:

"We have held that where the fact of insanity has been established, the presumption of insanity continues until the subject is shown to have been restored to reason (citing cases). An adjudication of insanity is conclusive evidence of insanity on the date of the rendition of the verdict (citing cases). While we have held that when insanity or mental unsoundness is shown to exist it is presumed to continue, we have just as definitely held the presumption is a disputable one, and may be rebutted by evidence of the actual condition of mind at any particular subsequent time (citing cases). These citations are not intended as being exhaustive. The rule that the presumption of continuing insanity, created by a verdict of insanity, may be rebutted by any competent evidence of a subsequent sound condition of mind at a particular time, appears to be well established (citing authorities)."

In addition to the many authorities cited in the opinion, see the annotations in 7 A. L. R. 568, 589, and 68 A. L. R. 1309, 1314, 1318.

Under these authorities it is clear that the adjudication of insanity of James W. Tuggle, set forth in the findings of the trial court, did not preclude an inquiry into whether he was sane or afflicted with insanity at the time of his marriage in 1941. We think the findings of fact of the trial court justify its conclusions of law.

It should be noted that this is not an action to annul a marriage under G. S. 1935, 60-1515, which may be brought by the incapable party. Evelyn Lena Strohmeier never brought an action to annul the marriage; in fact in her will, made a few months before her death, she referred to J. W. Tuggle as her husband. More than that, the probate court has no jurisdiction of such an action. (See *In re Estate of Crump*, 161 Kan. 154, syl. ¶ 4, 166 P. 2d 684.)

We have examined the authorities cited by appellant and find nothing in any of them which requires or justifies a contrary holding.

In *Witt v. Heyen*, supra, the court held the statute relied upon by appellant here to be valid, but it did not hold that a marriage in violation of the statute was void. That question was not before the court, neither is it here under the findings of the trial court. *Wilhite v. Wilhite*, 41 Kan. 154, 21 Pac. 173, was a divorce action in which it was held that the plaintiff could not recover alimony, she having married after being divorced from her former husband in Oregon and within the time prohibited by the Oregon statute. In *Fearnow, et al., v. Jones, et al.*, 34 Okla. 694, 126 Pac. 1015, the Oklahoma court held void a marriage between relatives which the statute held to be "incestuous, illegal and void," much as our G. S. 1935, 23-102. In *Ross v. Bryant*, 90 Okla. 300, 217 Pac. 364, the Oklahoma court sustained a decree which annulled a marriage of parties prohibited by the statute from marrying because of their age; nothing was said about the marriage being void, as distinct from being voidable.

We find no error in the record. The judgment of the trial court is affirmed.