(615 P.2d 836)
No. 80-51380-A

Frank E. Brice-Nash, *Appellant,* v. Etta M. Brice-Nash, *Appellee.*

Opinion filed August 22, 1980.

*Robert L. Taylor,* of Hutchinson, for the appellant.

*David L. Brown,* of Weinlood, Cole, Shaffer & Brown, of Hutchinson, for the appellee.

Before Foth, C.J., Parks and Swinehart, JJ.

Swinehart, J.: This is an appeal from an order of the district court of Reno County dismissing the divorce action filed by the plaintiff, Frank E. Brice-Nash.

Plaintiff and defendant, Etta M. Brice-Nash, were married on July 19, 1975. Presently, the plaintiff is in his mid-eighties and the defendant is in her late seventies.

In late 1978, the defendant filed an application for the appointment of a guardian and conservator for the plaintiff. The case was filed in Reno County District Court, and on February 28, 1979, a hearing on the application was held. The court found in a journal entry filed on March 16, 1979, that the plaintiff, Frank E. Brice-Nash, "is an incapacitated person who is unable to make or communicate responsible decisions concerning his person or estate, for which reason a guardian should be appointed and a conservator should be appointed." The Hutchinson National

Bank & Trust Company was appointed conservator and Bruce Kelley was appointed guardian.

On April 10, 1979, a motion was filed by the plaintiff through his attorney to alter or amend the judgment or to grant a new trial. Among other things, the motion stated that the pleadings and decision failed to notify the movant of the reasons for his alleged incapacity, thereby denying him due process, and also alleged that K.S.A. 59-3002(1) was unconstitutional on the ground that it deprived him of his liberty to possess and enjoy his property. Further, the motion stated that the decision was contrary to the facts. In a memorandum opinion filed on April 24, 1979, the trial judge elaborated upon his decision, stating that Frank Brice-Nash suffered from cerebral arteriosclerosis and cerebral insufficiency. Further, he declined to take medication, was neglectful of his person and dealt with his property inconsistently. The court stated: "He is, by reason of physical and mental illness and/or deficiency, an incapacitated person as defined by K.S.A. 59-3002, as he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person and estate." The trial court therefore upheld its decision appointing a conservator and guardian.

In an opinion filed on July 2, 1979, the trial court responded to the motion to alter or amend filed by Frank E. Brice-Nash, stating that the only issue remaining under the motion was the constitutionality of K.S.A. 59-3002(1). The court found that Brice-Nash had failed to sufficiently demonstrate that the statute was unconstitutional. No appeal was taken from the judgment of incapacity.

In a journal entry filed on July 23, 1979, the court refused to hear an application for restoration to capacity, filed by the plaintiff pursuant to K.S.A. 59-3027. However, the court appointed a new guardian and conservator, Marguerite Sours.

On April 11, 1979, after the plaintiff had been adjudicated an incapacitated person, he filed an action for divorce, which is the subject of this appeal. In an opinion filed on July 2, 1979, the trial court dismissed the plaintiff's petition for divorce without prejudice on the ground that the plaintiff had been adjudicated an incapacitated person, and therefore lacked legal capacity to file the action. The court found that the determination that the plaintiff was an incapacitated person was binding upon it under the doctrine of res judicata and would so remain until restoration was

accomplished. A journal entry embodying this memorandum decision was filed on July 20, 1979, and on August 14, 1979, the plaintiff filed his notice of appeal.

Plaintiff has raised four issues on appeal as follows: (1) Did the trial court err by concluding that the finding of incapacity made in the guardian and conservator proceedings was res judicata and conclusive as to capacity in the subsequent divorce proceedings? (2) Would the rule of *Birdzell v. Birdzell,* 33 Kan. 433, 6 Pac. 561 (1885), preclude a guardian and conservator from seeking the relief of divorce for a ward and conservatee, under all circumstances? (3) Should the rule of *Birdzell v. Birdzell* be abandoned? (4) Under what circumstances may a ward or conservatee act independently of his guardian and conservator?

Based upon the facts of this case, we need only decide the first issue raised by plaintiff, even though some of the arguments advanced by plaintiff with respect to the other three issues will be discussed in arriving at our decision.

The basic issue, then, is whether the trial court erred by dismissing without prejudice the petition for divorce filed by the plaintiff on the ground that the plaintiff lacked capacity to sue because he had been adjudicated an incapacitated person. The plaintiff contends that the question of his capacity to sue should have been determined by the district court during the course of the divorce proceedings. Consequently, he argues that the trial court erred by accepting the adjudication of his incapacity as conclusive and binding on it.

Capacity to sue is statutorily controlled by K.S.A. 60-217. K.S.A. 60-217(*a*) provides that all actions must be prosecuted in the name of the real party in interest. However, a guardian or conservator, or another party authorized by statute, may sue in his or her own name without joining the party for whose benefit the action is brought under K.S.A. 60-217(*c*), which reads:

"Whenever a minor or incapacitated person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue [or] defend on behalf of the minor or incapacitated person. If a minor or incapacitated person does not have a duly appointed representative he or she may sue by his or her next friend or by a guardian *ad litem.* The court shall appoint a guardian *ad litem* for a minor or incapacitated person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the minor or incapacitated person."

In his commentary Judge Gard has stated:

"The policy of the rule is to provide every infant or incompetent litigant with adequate representation, whether he be plaintiff or defendant. . . . Heretofore the right of an incompetent to sue by a next friend has been determined by court decision, as there was no statute on the subject." Gard's Kansas C. Civ. Proc. 2d § 60-217 (1979).

Accordingly, in any action involving an incapacitated person who is not represented by a guardian, conservator or the like, the court is under an affirmative duty to take whatever action is necessary to appoint a representative to assure that the rights of the incapacitated party are not abrogated due to lack of proper representation.

Not directly involving capacity to sue, but nevertheless relevant to the question, is K.S.A. 1979 Supp. 60-1604(*a*) which requires that in divorce actions: "The truth of the allegations of any petition under this article must be verified by the plaintiff in person." *Cf.* K.S.A. 60-211 which states the general rule that unless otherwise provided by statute, a pleading shall be signed by at least one attorney of record for a party who is represented in an action. Any party who is not represented by an attorney must sign his or her own pleading.

These statutory provisions indicate that an incapacitated person may not file suit for divorce in his or her own name, and may be unable to evidence the requisite state of mind to verify the allegations in a divorce petition. The plaintiff asserts, however, that the capacity necessary to file a divorce petition and to have knowledge of the consequences of such an action is not necessarily the same as that required in other kinds of proceedings. Rather, in each case the trial court must determine anew whether a plaintiff has the necessary capacity to sue for divorce.

Before considering the plaintiff's position that the divorce court should decide whether one has the capacity to sue for divorce, we must consider the effect of plaintiff's adjudication of incapacity on the divorce proceeding. The probate code provides a comprehensive scheme for the determination of incapacity and the restoration to capacity. K.S.A. 59-3006 vests the district court with authority to appoint a guardian and/or a conservator for an individual who is incapacitated and unable to make or communicate responsible decisions concerning his or her person or estate, respectively. The definitions of guardian, conservator and incapacitated person are all contained in K.S.A. 59-3002.

Especially important to this action is K.S.A. 59-3027, which

sets forth the procedures to be followed for restoration to capacity. A verified application for restoration to capacity containing prescribed information may be filed by any ward or conservatee who has been declared an incapacitated person or by any person in the ward or conservatee's behalf. The district court may refuse to hear such an application for six months from either the date of the original adjudication of incapacity or for six months from the date of any hearing on an application for restoration. Under the statute, the court has the discretion to deny a hearing on the application for restoration.

K.S.A. 59-3028(A)(1) provides that a guardianship or conservatorship shall terminate when a ward or conservatee is an incapacitated person and there is an order of the court entered after a finding that there is no further need of the guardianship and conservatorship. This suggests that there are times when a guardianship or conservatorship should terminate in situations other than a proceeding for restoration to capacity. However, K.S.A. 59-3028(A)(3) also provides for a termination upon restoration to capacity. As the probate code contains the specific procedure provided by the legislature for restoration to capacity, this is a strong indication of legislative intent that it be the exclusive procedure to be used for restoration to capacity. Therefore, 59-3028 does not authorize the district court having jurisdiction over the divorce proceedings to make the necessary determination of capacity during the divorce proceedings.

Therefore, the only way that the plaintiff's capacity to sue could be questioned is in a proceeding for restoration to capacity. As a result, the judgment rendered under the provisions of the probate code, that the plaintiff was an incapacitated person requiring a guardian and conservator, is conclusive and binding on the trial court in the divorce action. Accordingly, the trial court properly determined that the plaintiff lacked the requisite capacity to file suit for divorce in his own name.

Plaintiff's reliance upon case law does not alter this conclusion. The plaintiff argues that a finding of incapacity is merely a rebuttable presumption of continued incapacity that may be refuted and ultimately rejected by a trial court in another proceeding. As authority for this proposition, he cites *In re Estate of Strohmeier,* 164 Kan. 675, 192 P.2d 181 (1948); *Toepffer v. Toepffer,* 151 Kan. 924, 101 P.2d 904 (1940); and *Fourth Nat'l Bank v. Diver,* 131 Kan. 113, 289 Pac. 446 (1930).

In *Toepffer v. Toepffer,* a wife sued for divorce from her husband of twenty years who had been adjudicated insane or of unsound mind thirty-one years prior to the suit. The husband's guardian ad litem defended in the action. The issue was not one of capacity to sue, but whether the defendant knew the nature and extent of his marital misconduct. The court relied upon the rule that an adjudication of insanity creates a presumption of continued insanity which may be rebutted by competent evidence of a subsequent sound mind at a given time (*Toepffer v. Toepffer,* 151 Kan. 924, Syl. ¶ 1). The court explicitly observed that no statute regarding restoration to capacity was in existence, unlike the situation today. Certainly *Toepffer* is distinguishable from the instant action, both as to its facts and to its relevant legal considerations.

*In re Estate of Strohmeier,* 164 Kan. 675, involved the question of the validity of a marriage to a man who had earlier been adjudicated insane. The court followed *Toepffer v. Toepffer,* 151 Kan. 924, Syl. ¶ 1, regarding the presumption of continued insanity.

In *Fourth Nat'l Bank v. Diver,* 131 Kan. 113, a guardian was allowed to bring an action to set aside a marriage entered into by his ward after the ward had been adjudicated feebleminded. The court allowed the suit because the guardian brought it as conservator of the ward's estate. In addition, there was a statute which authorized an action for annulment of a marriage brought by the party incapable of contracting the marriage. The court also acknowledged the continuing presumption rule regarding insanity. Like the two cases cited immediately above, *Diver* is distinguishable from the proceeding in question on several grounds; *e.g.,* there was statutory permission for an incapable party to have a marriage annulled, the guardian of the party's *estate* filed suit which was revived by the executor after the party's death, no question of the party's capacity to sue in his own name was directly addressed (although dicta based upon *Birdzell v. Birdzell,* 33 Kan. 433, suggests such a procedure would have been impossible.)

Other cases cited by plaintiff to support his argument that capacity is a question of fact to be examined in any proceeding where it may be a factor appear irrelevant to the question of

capacity to sue for divorce, because they involve things such as testamentary capacity.

*Birdzell v. Birdzell,* 33 Kan. 433, perhaps the leading Kansas case concerning capacity to sue for divorce, rejected an attempt made by the guardian of an insane woman to sue for divorce. Although *Birdzell* is factually distinguishable from the instant action, portions of the opinion are worth mentioning. The Supreme Court emphasized that a marriage could not be entered into without the free and voluntary consent of both parties. Nor could it be destroyed without the "free and voluntary consent" and the "active and affirmative volition" of the innocent party. The court declared that an insane person was incapable of such consent. Additionally, the decision to seek a divorce was a "personal matter resting solely with the injured party, and it requires an intelligent election on the part of such party to commence the proceedings, and such an election cannot be had from an insane person." 33 Kan. at 435, 436.

While the role of "fault" in a divorce action has changed since *Birdzell* (see K.S.A. 60-1606) and while "incapacitated" has been substituted for insane in guardian and conservator proceedings, the basic tenets described in the opinion, *i.e.,* that a decision to divorce is a personal one requiring full volition and consent of the one instituting the proceedings, are still valid. We conclude that as the plaintiff was declared incapacitated because he lacked sufficient understanding or capacity to make responsible decisions concerning his person and estate, he lacked the requisite capacity to file suit for divorce until such time as he was restored to capacity in accordance with the provisions of the probate code.

Judgment is affirmed.