NOT DESIGNATED FOR PUBLICATION

No. 121,978

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALMA BELMORE,
*Appellee*,

v.

MARGARET GOLDIZEN and JAY GOLDIZEN,
*Appellants*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; RYAN W. ROSAUER, judge. Opinion filed September 10, 2021. Affirmed.

*Peter Charles Rombold*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellants.

*Melissa D. Richards*, of Weary Davis, L.C., of Manhattan, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: After a family meeting to discuss concerns about the mental well-being of their mother, Alma Belmore, one of Alma's children, Margaret Goldizen, removed Alma from her long-time residence in Washington and moved her to Kansas, hiding Alma from Margaret's siblings so Margaret could gain control of Alma's property and bank accounts. While keeping Alma in an RV on the same property where Margaret resided with her husband Jay, Margaret persuaded Alma to give her power of attorney and add Margaret's name to bank accounts and real estate Alma owned. The Goldizens stopped paying Alma rent, commingled Alma's funds with theirs, and spent Alma's

1

money for their own benefit. After Alma discovered what Margaret had done, she revoked Margaret's power of attorney and moved in with one of Margaret's siblings. Yet, even after revocation of this power of attorney, Margaret still tried to deposit proceeds from the sale of Alma's land into Margaret's personal account and has refused to return Alma's personal property.

Alma sued the Goldizens to recover her property and unpaid rent. She prevailed on all claims. The Goldizens now seek to set aside the judgment by challenging the sufficiency of the evidence and asserting a prior lawsuit in Washington precluded the court's findings. We are unpersuaded by the Goldizens' arguments and affirm the district court's well-reasoned and thorough decision.

FACTS

Alma has six adult children—Margaret, George Belmore, Mary Poulin, Gary Belmore, Edward Belmore, and Robert Belmore. Mary and Margaret live in Kansas, and the brothers live in Washington. Other than a brief stint in Kansas during this dispute, Alma has lived in Washington for several decades. Alma's husband, the children's father, died in 2000.

In 2000, Alma bought property in Abilene, Kansas, to use for rental or investment purposes. Several years ago, she rented the home on this property to the Goldizens through an oral lease, for monthly rent of $400. In 2010, Alma executed a quitclaim deed to Margaret for the Kansas property to limit the size of her estate after a car accident. They did not record this deed, and Margaret gave the property back to Alma later that year.

By March 2016, Alma was in the middle state of dementia. She was showing signs of nonreality-based thinking and paranoia, which all her children admitted noticing. On

2

March 9, 2016, Alma and Margaret met with an attorney in Washington and discussed drafting estate planning documents for Alma, including a durable power of attorney naming Robert as Alma's attorney-in-fact and Margaret as the alternate. This attorney claimed Margaret called her the next day, instructing her to list Margaret as Alma's attorney-in-fact and switch Robert to alternate.

On March 12, Alma's children (except Mary) gathered in Washington to discuss Alma's deteriorating health and ability to manage her affairs. After this meeting, Margaret persuaded Alma that her sons intended to place her in a care home so they could take control of her property. Margaret then moved Alma and her belongings to Kansas, where she began living in an RV on the Kansas property. The Goldizens continued living in the house located on this property, but they stopped paying rent after taking custody of Alma.

Until this time, Alma lived in a home she owned in Pierce County, Washington. Margaret hid the move from her siblings. They only learned of it after Margaret went to her brother George's office and told him Alma had left Washington hours earlier with Margaret's former daughter-in-law, Tisha Whatley, and she would now be living in Kansas.

On March 14, a hand-written quitclaim deed was recorded in Washington, transferring ownership of Alma's Washington property to Alma and Margaret as joint tenants with a right of survivorship. Alma claimed she only signed this deed because Margaret yelled at her and demanded that she sign various documents. Alma claimed she did not understand what she was signing. On March 17, Alma signed another hand-written quitclaim deed transferring ownership of Alma's Kansas property from Alma to Alma and Margaret in joint tenancy with a right of survivorship. Again, Alma alleged she did not understand what she was signing and only acquiesced because Margaret yelled at

3

her and demanded that she immediately sign the deed. Margaret gave no consideration for either of these deeds.

On March 14, $47,153.85 was withdrawn from Alma's checking and savings accounts. Sometime that month, Margaret's name was added to these accounts. These funds are not completely accounted for. Also in March, Alma opened three accounts at Central National Bank (where the Goldizens bank) and deposited $10,648.18. Funds were later withdrawn from these accounts which are also unaccounted for.

On March 24, Alma signed durable power of attorney documents naming Margaret as her attorney-in-fact, and Jay as her alternate, for financial and healthcare decisions. Margaret also prepared and had Alma sign documents which terminated George's lease of a building on Alma's Washington property, which George had held for over a decade, along with restraining orders against Margaret's siblings.

After Alma moved to Kansas, Alma's sons were unable to contact her. They became concerned because Margaret had a history of drug use and financial reliance on Alma. The sons filed a Petition for Temporary Order of Protection for a Vulnerable Adult in Pierce County, Washington, on March 30, 2016, alleging that Alma was a vulnerable adult in need of protection from Margaret. The Pierce County District Court granted a temporary order, but it ultimately dismissed the case on June 1, 2016, after Alma alleged she could manage her affairs and trusted Margaret. Later, Alma claimed she only made these assertions because "she had not yet realized or uncovered [Margaret]'s intentions." Whatley testified Margaret significantly influenced Alma's written allegations in Washington by telling her what to write.

At some point, Alma noticed she was no longer receiving mail, including her bank statements. She asked Margaret to take her to the bank, but Margaret refused. While Margaret was away, Alma went to the bank and learned a great deal of her money was

missing. She discovered Margaret had been using her credit cards, too, leaving Alma with a balance of a little over $23,000. Alma first moved in with Mary in Kansas, then later moved back to Washington to live with her sons. Margaret has refused to return Alma's personal belongings.

Alma executed documents revoking Margaret's appointment as attorney-in-fact in February 2017. Margaret was notified by text message and letter. Alma's Washington property was sold around this time. The proceeds of the sale were nearly $325,000. Despite being notified about Alma's revocation of the power of attorney, Margaret tried to deposit a check for the proceeds from the sale into her personal checking account. Margaret endorsed the check as attorney-in-fact for Alma. Alma's bank was aware of the power of attorney revocation and prevented Margaret from placing the money in her individual account.

Margaret still had possession of the 2010 quitclaim deed from Alma, which she filed on May 2, 2017. She said she had purchased, rather than rented, the property from Alma and paid it off in 2012. She said she waited so long to file the deed because she and Alma had agreed they would keep Alma's name on the property for tax purposes.

Alma sued Margaret in Kansas for: (1) breach of fiduciary duty as attorney-in-fact, (2) undue influence (for coercing Alma to change the ownership of her Kansas and Washington real property), (3) conversion of Alma's personal property and money, and (4) breach of oral contract for Margaret's failure to pay rent. Alma filed an amended petition two days later, adding Jay as a defendant for the conversion and breach of oral contract claims.

In January 2018, Alma and Edward, Alma's attorney-in-fact at the time, moved to substitute Edward as plaintiff in the lawsuit under K.S.A. 2020 Supp. 60-225. The Goldizens objected to Edward serving in this role. The parties agreed to substitute an

attorney, Catherine Craft, as plaintiff instead. Craft was recommended by a local judge who had unsuccessfully tried to mediate the parties' dispute.

After a lengthy trial, the district court issued a 12-page memorandum decision, ruling in Alma's favor on all four counts. The court made several factual findings and incorporated its assessment of various witnesses and evidence into those findings. The court found Margaret's testimony unbelievable and "incredible." It found she had exploited Alma and even altered evidence to try to bolster her position in the lawsuit.

ANALYSIS

The Goldizens do not challenge the district court's findings that Margaret breached her fiduciary duties to Alma when serving as her attorney-in-fact or that the Goldizens breached their oral lease to rent the Kansas property. Instead, they challenge the district court's decision to invalidate Alma's transfers of personal and real property to Margaret based on its finding that those transfers resulted from Margaret's exercise of undue influence over Alma. We are thus charged with determining, without reweighing evidence or reassessing witness credibility, if the district court's findings were supported by substantial competent evidence. Under this standard, "substantial evidence" is "'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *Cresto v. Cresto*, 302 Kan. 820, 835, 358 P.3d 831 (2015).

*The finding of undue influence is supported by substantial evidence.*

The district court invalidated the real estate deeds after finding they stemmed from Margaret's undue influence over Alma. When making this finding, the district court applied the test from *Cresto*. There, the Kansas Supreme Court found a presumption of undue influence can be established by showing that (1) the person who is alleged to have exerted undue influence was in a confidential and fiduciary relationship with the person

6

executing the document and (2) there were "suspicious circumstances" surrounding the making of the document. If this presumption is established, the burden then shifts to the opposing party to rebut the presumption. 302 Kan. at 834; see *In re Estate of Moore*, 53 Kan. App. 2d 667, 682, 390 P.3d 551 (2017), *aff'd* 310 Kan. 557, 448 P.3d 425 (2019).

As the district court noted, the Goldizens did not contest that Margaret was in a confidential and fiduciary relationship with Alma. Nor do they contest this fact on appeal. Instead, they focus their attack on the court's affirmative finding of suspicious circumstances surrounding the execution of the deeds and its negative finding that the Goldizens failed to rebut the presumption of undue influence. In doing so, they basically survey each paragraph of the court's opinion, contesting how the district court weighed the evidence and assessed the credibility of the witnesses.

We cannot reweigh the evidence or reassess the credibility of the witnesses on appeal. And as to the district court's negative finding that the Goldizens failed to rebut the presumption of undue influence, we cannot "'nullify a trial judge's disbelief of evidence nor can [we] determine the persuasiveness of evidence which the trial judge may have believed.'" *Cresto*, 302 Kan. at 845. In fact, "'[a]bsent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed.'" 302 Kan. at 845.

Many of the Goldizens' complaints relate to the weight the district court placed on the evidence and its witness credibility decisions. A common theme in their brief is to accuse the district court of "disregarding" or "ignoring" evidence that supported the Goldizens. Yet it is apparent from the court's opinion that it considered the Goldizens' evidence and simply found it to be less credible than the evidence supporting the claims in the petition.

One such complaint is the Goldizens' challenge to the district court's finding that Alma was suffering from dementia in March 2016. The Goldizens argue the district court's findings about Alma's mental state "are starkly inconsistent with the record." They point out that Alma was found competent by Dr. Heather Bloesser, by the attorney who executed the deeds, and by the Washington court. While there was disputed evidence on this point, substantial evidence upholds the district court's finding.

As the district court noted, the purpose of the family meeting in March 2016 was to address concerns about Alma's progressing dementia. Their concerns included Alma's accusations that George was stealing her things when she had just misplaced them and her increasing suspiciousness. Whatley testified that on their way to Washington to get Alma, Margaret told her that Alma was not doing well and was showing signs of dementia. At trial Margaret admitted she was "sure" Alma was in the early stages of dementia at the time of the meeting, though she later denied having any concerns about Alma's mental state in 2016.

The Goldizens also argue the district court ignored the evidence establishing that Margaret bought the Abilene house from Alma. Again, the court did not ignore evidence, it just placed more weight on other evidence that supported its findings. And the record supports the court's holding that Alma and Margaret had a rental agreement rather than a purchase agreement. Alma bought the house intending to use it as a rental property. Multiple people testified that Margaret rented the house from Alma. Indeed, Margaret continued to make payments to Alma for the property even after she purportedly paid for it in full in 2012. This evidence all supports the court's finding.

Another common theme in the Goldizens' brief is their assertion that the district court must believe Alma's 2016 statements about her intentions and state of mind because she was found competent in Washington, leading to the dismissal of that case. For example, they argue the Kansas district court cannot question Alma's decision to deed her

properties to Margaret as a joint tenant because Alma was found competent when she executed those deeds. However, as noted below, the Washington judgment has no preclusive effect on the claims here. The Washington filings and dismissal were simply evidence, like the other evidence presented at trial, which the court weighed and found unpersuasive. For example, the court discounted the Washington matter since no evidentiary hearing was held. It also found Alma's March 2016 medical evaluation, offered in Washington, was outweighed by other evidence, such as the fact that the children, including Margaret, had concerns about Alma's mental state at that same time— so much so, that they met in March 2016 to discuss their concerns.

The Goldizens also incorrectly presume the district court must find Alma incompetent before it could find Margaret exercised undue influence over her. This is not true. Alma only had to establish that suspicious circumstances surrounded the property transfers to create the presumption of undue influence. The court looked to both Alma's and Margaret's actions in finding such a presumption was created and in finding the Goldizens failed to rebut it. For example, the court found it significant that Margaret moved Alma out of Washington in secret, tried to hide Alma from her siblings, and by arranging for Alma to terminate George's longtime lease and take out restraining orders against her siblings.

While Margaret testified that she moved Alma's cash into her personal account and added herself as a joint tenant on Alma's real estate to "protect" these assets, the district court pointed out such measures were unnecessary. Once Margaret had Alma's power of attorney, she could adequately protect Alma's interests without transferring ownership interest in that property to herself.

This case shares similarities with *Cresto*, 302 Kan. 820. There, Francis Cresto established a revocable trust in 1997 naming his three children and two stepchildren as beneficiaries. He updated it several times throughout the years to account for his

9

stepdaughter's death and his marriage to Kathleen Cresto. Francis' children and stepchildren remained beneficiaries through the amendments. In 2007, Francis allegedly contacted an attorney, who was in a romantic relationship with Kathleen's daughter, and "informed her that he now wanted to remove his children and stepdaughter as the beneficiaries from his estate plans." 302 Kan. at 826. The attorney prepared a new will that bequeathed all Cresto's property to Kathleen and, if Kathleen did not survive Francis, to Kathleen's children. The new trust document made similar changes. Because the attorney was not licensed in Kansas, Francis also had a Kansas attorney who served as local counsel. The local attorney reviewed the new estate documents with Francis and Kathleen and determined there was no doubt that Francis was competent to execute the documents and that he was making his own decision. He did not believe Kathleen tried to improperly influence Francis. The documents were executed in 2008. Francis died in 2010. Francis never told his children that he disinherited them from his estate plan.

Two of Francis' children sued to invalidate Francis' will and trust, claiming they stemmed from undue influence. They stipulated Francis "was of sound mind at the time he executed the 2008 estate planning documents." 302 Kan. at 827. The district court found evidence of suspicious circumstances that supported a presumption of undue influence, which Kathleen failed to rebut. Thus, the district court voided the will and trust. 302 Kan. at 829.

When affirming the district court, the Kansas Supreme Court acknowledged Kathleen's argument that the district court ignored "the undisputed evidence that Decedent was very strong-willed and organized; he was articulate with a sharp mind; he was detail-oriented and meticulous; he was competent at the time he executed his 2008 estate planning documents; and he initiated the 2008 changes before he was diagnosed with prostate cancer." 302 Kan. at 845. The court found the facts highlighted by Kathleen "would be compelling evidence in support of rebutting the presumption of undue influence, if the district court had either found them to be true or ignored them." 302 Kan.

at 847. But the court disagreed with Kathleen's assertion that the district court ignored evidence, rather, the court simply was not persuaded by it. What Kathleen was really asking the court to do on appeal was "to reweigh and reassess the evidence," which the court declined to do. 302 Kan. at 845.

The Goldizens' arguments fail for the same reasons as the defendants' in *Cresto*. The district court did not ignore evidence, it just placed little weight on the evidence offered by the Goldizens. Assessing the weight of the evidence is within the purview of the district court, not this court.

*The Washington case has no preclusive effect on the Kansas case.*

The Goldizens also challenge the district court's finding of undue influence by claiming Alma was competent when she transferred her property interests to Margaret in 2016. They argue the doctrines of res judicata and collateral estoppel "prevented the Court from reassessing whether Alma was competent in 2016 when she transferred interests in her real and personal property to Margaret and whether or not these transfers should be set aside due to undue influence exercised by Margaret upon Alma." Whether the doctrines of res judicata or collateral estoppel apply is a question of law subject to de novo review. *In re Care & Treatment of Sporn*, 289 Kan. 681, 686, 215 P.3d 615 (2009).

The elements of the two doctrines are as follows:

> "An issue is res judicata when four conditions concur:  (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and [4] identity in the quality of persons for or against whom claim is made. The requirements of collateral estoppel are: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the

11

judgment. [Citations omitted.]" *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 (1999).

There are several problems with the Goldizens' argument. First, the issues in Washington differed from those in Kansas:  The Washington case addressed Alma's competency, while the Kansas case addressed whether Margaret exercised undue influence over Alma. In Washington, George had to establish that Alma was a vulnerable adult along with establishing she had been financially exploited. In Kansas, Alma only had to establish undue influence. As explained above, the Goldizens are wrong in arguing a person must be adjudged incompetent before he or she can prevail in an action for undue influence. See *Cresto*, 302 Kan. at 832-34.

Additionally, the doctrines of both res judicata and collateral estoppel require the parties to be the same or in privity. That element is missing here. Margaret was the defendant in both actions, but the plaintiffs were different. In Washington, the petition was filed by George on behalf of Alma. George, not Alma, carried the burden of proof. Alma opposed the allegations in Washington, and her interests were aligned with Margaret there. Yet, in Kansas, Alma and Margaret's interests are opposed, and Alma now claims she was mistaken in her opposition to the Washington case.

The Washington case was filed on March 30, 2016, and dismissed without an evidentiary hearing on June 1, 2016. It did not address any of the Goldizens' actions after its dismissal (which the district court found suspicious), such as their commingling of Alma's funds with theirs and then spending it on themselves, using Alma's credit cards for their own personal benefit, taking Alma's personal property and refusing to return it, discontinuing rent payments shortly after taking custody of Alma, Margaret trying to deposit the proceeds from the sale of Alma's Washington property into Margaret's personal account on February 7, 2017 (even after knowing she no longer had Alma's power of attorney), Margaret's filing of the 2010 Kansas deed on May 2, 2017, and her

12

alteration of evidence to try to bolster her case. The dismissal in Washington also appears to have been influenced by Alma's opposition, which Whatley testified was significantly influenced by Margaret, who told her what to say. Last, as the district court aptly noted, the medical testimony in Kansas presented a more complete picture of Alma's mental health, particularly given her condition (dementia) and the later findings of her doctors. The district court did not err in considering the Washington case simply as evidence, along with the other evidence presented by the parties. It had no preclusive effect on the issues addressed by the Kansas court.

*Appointment of a guardian ad litem*

The Goldizens conclude their appeal by briefly arguing the district court erred in failing to appoint a guardian ad litem (GAL) for Alma. Yet no party requested appointment of a GAL, and their argument that the court had to do so sua sponte turns on a mistaken interpretation of K.S.A. 2020 Supp. 60-217.

During the Kansas litigation, Alma and Edward, her attorney-in-fact, moved to substitute Edward as plaintiff pursuant to K.S.A. 2020 Supp. 60-225(b) and K.S.A. 2020 Supp. 60-217(c)(2). Under K.S.A. 2020 Supp. 60-225(b), when "a party becomes an incapacitated person, the court may, on motion permit the action to be continued by or against the party's representative as provided in subsection (c) of K.S.A. 60-217, and amendments thereto." K.S.A. 2020 Supp. 60-217 provides:

> "(c) *Minor or incapacitated person*. (1) *With a representative*. The following representatives may sue or defend on behalf of a minor or an incapacitated person:
> (A) A general guardian;
> (B) a committee;
> (C) a conservator; or
> (D) a like fiduciary.

"(2) *Without a representative*. A minor or an incapacitated person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem, or issue another appropriate order, to protect a minor or incapacitated person who is unrepresented in an action."

The Goldizens objected to the appointment of Edward to represent Alma's interests, but they did not argue the appointment of some third party to represent Alma was unwarranted. The district court substituted attorney Catherine Craft as plaintiff in the case, but noted she was not serving as a GAL. Craft was apparently recommended for the position by a judicial mediator the parties had used for a failed mediation.

Our review of the record does not reveal any objection from the Goldizens to Craft's appointment, nor have the Goldizens identified any such objection. While they claim on appeal they "understood" Craft would be appointed as a GAL, the district court specifically explained that Craft would only be standing in as plaintiff and would not serve as a GAL. The record does not reveal any objection from the Goldizens after the court provided this explanation, nor does it reveal any request for the appointment of a GAL.

The Goldizens now claim the district court abused its discretion in appointing Craft as substitute plaintiff because they claim K.S.A. 2020 Supp. 60-217(c)(2) required appointment of a guardian ad litem under the circumstances. Yet this section only applies to parties who are unrepresented, and Alma had given Edward her power of attorney before even filing the lawsuit. Thus, Alma was represented by a fiduciary in the litigation. See *Mitchelson v. Bolton*, No. 67,770, 1993 WL 13965376, at *3 (Kan. App. 1993) (unpublished opinion) ("The act of designating one person with a general power of attorney establishes a fiduciary relationship between those parties."). Further, even if subsection (c)(2) applied, the district court adhered to the statute by appointing Craft as substitute plaintiff. The statute does not require appointment of a GAL, as the Goldizens

14

claim. Rather, it allows the court to appoint a next friend, such as Craft, or to "issue another appropriate order" to protect the incapacitated person. K.S.A. 2020 Supp. 60-217(c)(2). Craft was a neutral third party and no concerns arose during the case that would suggest her appointment failed to protect Alma's interests in the case. Alma's rights were not "abrogated due to lack of proper representation" by Craft's appointment. See *Brice-Nash v. Brice-Nash*, 5 Kan. App. 2d 332, 335, 615 P.2d 836 (1980).

The Goldizens did not seek appointment of a GAL, nor have they shown the district court erred in failing to appoint one. They also have not shown any prejudice to the parties without a guardian ad litem in this matter. This claim provides no basis to overturn the district court's judgment.

Affirmed.